No. 9986.

ERICKSON v. THE KNIGHTS OF THE MACCABEES OF THE WORLD.

Decided January 9, 1922.

Action on fraternal benefit certificate. Judgment for plaintiff for $210, the amount of premiums paid.

*Affirmed.*

1. INSURANCE—*Life Benefit Certificate—Application.* Where the applicant for a life benefit certificate in a fraternal society makes false answers to material questions contained in the application, which he warrants to be true, his beneficiary cannot recover on the certificate.

2. CONTRACT—*Foreign Language.* In the absence of fraud, a party may not avoid a contract which he voluntarily executes, on the ground that he could not read the language in which it was written, and that it was different from what he supposed. In such circumstances it is his duty to obtain a reading and explanation of it before signing.

*Error to the District Court of San Miguel County, Hon.*
*Thomas J. Black, Judge.*

Mr. L. E. MARTIN, for plaintiff in error.

Mr. GEORGE P. STEELE, for defendant in error.

*En banc.*

MR. JUSTICE WHITFORD delivered the opinion of the court.

THIS is an action to recover on a policy of a fraternal benefit society, issued by the defendant in error on the life of Gust A. Erickson. The complaint alleges that the benefit certificate was issued in March, 1914, to Gust A. Erickson for $2,000.00, payable at his death to his wife, the plaintiff in error; that the insured died April 7, 1919, while in good standing, having paid in dues and assessments up to the time of his death the sum of $210.00.

The answer denies all liability except $210.00 received by the Society as premiums, which it offered to return and tendered repayment of that sum, and by special plea alleged that the answers given to questions contained in the application signed by the insured were false and untrue; that the false answers given to questions contained in the application and warranted by the insured to be true, were as follows:

"20. Have you ever been under the care of or consulted a physician concerning yourself for any cause within five years? No.

"21. If so, for what ailment, name and address of physician? No.

"22. Have you now or ever had any disease of the following named organs, or any of the following named diseases or symptoms? If so, give particulars.   *   *   * Pneumonia   *   *   * or any diseases of the throat or respiratory organs? No."

That within five years prior to the date of said application the insured had, in October and November, 1913, pneumonia, a disease of the lungs, and had been treated there-

for by Dr. Nordlund, a physician, from October 28 to November 18, 1913; that immediately thereafter the insured applied to The Continental Casualty Company for sick benefits under a policy issued by that company to him for sick benefits, and after making regular proof of sickness to that company received from it full payment for such sickness; that Gust A. Erickson made an application for membership, in writing, to the defendant in error; that in his written application he agreed and warranted that all answers to the questions therein were true, and that any untrue answer made by him should render the benefit certificate null and void. The replication alleged that the insured was a Swede and did not understand the English language; that the agent of the defendant in error did not furnish the insured with an interpreter.

The answers to the questions in one of the exhibits in evidence, signed by the insured on the 22nd day of November, 1913, and presented to The Continental Casualty Company for sick benefits, were as follows:

"6.   When did you become ill?   October 28, 1913. Hour, 7:00 P. M.

"7.   State day and hour after you became ill on which you quit work?   Oct. 28.

"8.   When were you first confined to house strictly? Oct. 28.

"9.   Are you at this date confined to your bed on account of this illness?   Yes.

"13.   Describe your symptoms?   High fever and cough and pain.

"14.   Name the disease?   Pneumonia.

"15.   How long since you were ill with it before?   About a year ago.

"17.   On what date did you first have a physician? Oct. 28.   Where?   At my house.

"19.   Give name of physician.   Marie Nordlund.   Address Box 544."

From the physician's report, signed by Dr. Marie Nord-

lund, which is a part of the same exhibit, it appears that the doctor made the following answers to the questions therein propounded to her as the attending physician, with respect to the illness of the insured in October and November, 1913:

"6.  What is the precise nature and extent of the illness? Lobar pneumonia.

"10.  What symptoms were shown at first examination? Cough, fever and pain.

"12.  How many times have you visited claimant at his house?  11 times.

Dates of visits?  Oct. 28 to Nov. 11 every day.

"25.  At first examination what was his temperature? 104.  Pulse?  130.  Respiration?  36."

The case was tried to the court without a jury and judgment rendered for the plaintiff for $210.00.  Plaintiff brings error.  There is no conflict in the testimony.  Under this positive and uncontradicted documentary evidence, which was corroborated by the testimony of the two daughters, the finding in favor of the defendant in error was correct.  The statements and answers to questions in the application were warranties, and the answers being unmistakably untrue, the plaintiff is not entitled to recover. *Knights and Ladies of Security v. Considine,* 61 Colo. 474, 158 Pac. 282.

It is further urged that the insured was a Swede and did not understand the English language, and therefore it is urged that the insured could not be bound by his statements and answers to the questions in the application.  The testimony touching the averments of the replication is very meager.  It simply shows that the insured was a Swede of average intelligence, who could sign his name, but could not understand or write the English language.  The record is silent as to what took place at the time of the making and signing of the application.  This showing is wholly insufficient to save the policy.  The rule of law on this subject is thus stated:

"A party's mere ignorance, occasioned by his limited intelligence and understanding of the language and of the contents of the contract which he voluntarily executes, is not, in the absence of fraud, a ground for avoiding it, although it is different from what he supposed. So where a person can not read the language in which a contract is written, it is ordinarily as much his duty to procure some person to read and explain it to him before he signs it as it would be to read it before he signed it if he were able so to do, and his failure to obtain a reading and an explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents." 13 Corp. Jur. 372; *Chicago R. R. v. Belliwith,* 83 Fed. 437-439, 28 C. C. A. 358; *Lauze v. N. Y. Life Co.,* 74 N. H. 334, 68 Atl. 31.

We find no prejudicial error in the record.

Affirmed.

MR. CHIEF JUSTICE SCOTT, and MR. JUSTICE BAILEY not participating.