MICHELINA EMANUELE, Plaintiff, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Defendant.

City Court of New York, Kings County, May 27, 1930.

*Ambro & Stockman*, for the plaintiff.

*E. M. & Paul Grout* [*Dean Potter* of counsel], for the defendant.

GOLDSTEIN, J.   This is an action at law by Michelina Emanuele, a beneficiary under a policy of life insurance, in the amount of $3,000, issued by defendant on the life of her husband, Gaspare Emanuele, on September 2, 1927.   The application for the policy was executed on August 22, 1927, and a series of questions and answers are attributed to the deceased, the falsity of which it is claimed vitiates the policy.

The facts as they were developed upon the trial illustrate the dire need for some further appropriate legislation for the protection of both the assured and the insurance companies where the applicant for insurance is illiterate and unable to read and write and where the facts as in the instant case clearly indicate that the assured was not cognizant of either the nature or legal significance of his acts in signing the application for insurance.

It appears that a policy for $200 was written by this same defendant on the life of the assured in 1924 bearing policy No. 72596243. That policy was not produced by either of the parties so as to afford the court an opportunity of ascertaining what answers were given to the various interrogations by the assured in 1924 when the initial policy was issued.

It appears that the assured was an illiterate grocer who was unable to read or write. He signed the application and the certificate annexed to the policy with a cross-mark. The questions propounded to him are witnessed by the signature of the medical examiner employed by the insurer. The answers to the series of questions seem to have been written in the handwriting of the same medical examiner. The following questions supposedly propounded to the assured are answered in the negative.

" 5. Have you ever been an intimate of, or have you ever received treatment at an asylum, hospital, sanatorium or cure? If yes, give date, duration, name of ailment and name of institution."

" 11. Have you ever suffered from any ailment or disease of

" (a) The Brain or Nervous System? "

" (c) The Stomach or Intestines, Liver, Kidneys or Genito-Urinary Organs? "

" 12. (f) Have you ever had any surgical operation?

" (g) Have you consulted a physician for any ailment or disease not included in your above answers?

" 13. What physician or physicians, if any, not named above, have you consulted or been treated by, within the last five years and for what illness or ailment? If none, so state."

It appears from the proofs of death, submitted by the beneficiary, that in the year 1919 the assured was operated upon for the removal of his appendix. It further appears that prior to the date of the application for and the issuance of the policy in suit, an operation for the removal of a kidney was performed upon the assured. It further appears that in 1922 an X-ray photograph was taken of the assured at the Long Island Hospital, but what that X-ray photograph reveals has not been proven. It further appears that the assured has at various times consulted with physicians within five years of the issuance of the policy in suit. There is no doubt, therefore, that the supposed answers to the foregoing questions are untrue.

Prior to the enactment of section 58 of the Insurance Law in 1906 (Laws of 1906, chap. 326, § 16), the application was not attached to the policy, and the claimant could offer evidence to show that the answers contained in the policy were not correct and that different information had been given to the examiner. (*Sternaman* v. *Metropolitan Life Insurance Co.*, 170 N. Y. 13.)

With the enactment of section 58 so as to require the companies to attach a copy of the application to the policy, the rule changed, and now if the application is attached no evidence may be offered to show the incorrectness of the answers.

In *Kwiatkowski* v. *Brotherhood of American Yeomen* (243 N. Y. 394) the Court of Appeals has held that testimony to the effect that an untrue answer given by the assured was not in fact propounded to him and that the assured could not read or write English was inadmissible. The Court of Appeals held: "*If the plaintiffs were seeking a reformation of the contract made by the applicant, through whom they claim, evidence that the answers contained in the written statement were never given and that the defendant, through its agents, have taken unfair advantage of her disability to read English, might be relevant.* We do not pass upon such question now. In the present case the plaintiffs are suing upon a contract and under its terms are not entitled to a recovery. The applicant might have refused to accept that contract until it had been read over and interpreted to her by some person in whom she had confidence. She chose not to do so. The defendant had not previously agreed to issue any certificate or policy except upon the terms of the written contract. The applicant was not deterred by any act of the defendant from learning its contents. We have held in *Satz* v. *Massachusetts Bonding & Insurance Co.* (243 N. Y. 385) (decided herewith), that the beneficiaries claiming under such contract may recover only in accordance with its terms."

The conclusion is inescapable, however, that actual knowledge of the two operations performed upon the assured would have been disclosed by a thorough physical examination of the assured. No serious surgical operations of the nature of those performed upon the assured could have been done without leaving the mark of the scar tissue caused by the incision.

A policy provision, however, provides: "That no statement made to or by and no knowledge on the part of any agent, medical examiner or any other person as to any facts pertaining to the applicant, shall be considered as having been made to or brought to the knowledge of the company unless stated in either Part A or B of this application."

In addition, it has been held by the Appellate Division, Second Department, in *Grubiak* v. *John Hancock Mut. Life Ins. Co.* (212 App. Div. 126), that in the case of a false and fraudulent representation in an application for insurance in an action upon a policy, the beneficiary is estopped from alleging and proving that the insurance agent and medical examiner for the company were both

aware of the true facts and that those facts were not stated in the application.

In *Bollard* v. *New York Life Ins. Co.* (98 Misc. 286) Mr. Justice LEHMAN stated: " Good faith toward the defendant [insurance company] as well as reasonable care on the part of the plaintiff [insured] required an examination of the contract, and a failure to make such examination constituted laches on the part of the plaintiff which precludes him from asserting an estoppel against the defendant." This decision was affirmed by both the Appellate Division and the Court of Appeals (182 App. Div. 915; affd., 228 N. Y. 521).

A grave injustice results where the application is delivered written in the English language to an insured who neither reads nor writes English and as a practical matter cannot check on the answers put down by the medical examiner employed by the insurance company. On the other hand, the insurance company is amply protected against the trickery of its own medical examiner through the policy provision that prevents his knowledge from being attributed to the company.

I am compelled to conclude that no fraud was contemplated by either the assured or the plaintiff, inasmuch as all of the information upon which this defense is based was received by the defendant from the beneficiary in the proofs of death supplied to it by the plaintiff. But the apparent falsity of the answers as to prior surgical operations at law bars recovery, inasmuch as the statements in the proofs of loss are not contradicted. Where a claimant submits proofs of death to the company, she is bound by the admissions contained in the doctor's statement. Where these statements are submitted without protest, they constitute admissions and do not constitute a violation of sections 352 and 354 of the Civil Practice Act. (*Rudolph* v. *John Hancock Mutual Life Ins. Co.*, 251 N. Y. 208.) The rule in that case has recently been followed by the Appellate Term of the Second Department in the case of *Naudzius* v. *Metropolitan Life Ins. Co.* (136 Misc. 167).

While the company requires these proofs and will not pay a claim without them, it is the duty of the claimant, if she does not desire to have these proofs used as evidence against her claim, to submit with the proofs a protest that the facts therein alleged are untrue. (*Goldschmidt* v. *Mutual Life Ins. Co.*, 102 N. Y. 486.)

The facts disclosed in this case show the need for suitable legislation so that in the case of illiterates and those unfamiliar with the English language a further safeguard should be provided so that when the application is attached to the policy it might be well to require that this application be printed in the language in which the

questions and answers are given. Only then would the court be justified in good conscience in invoking the harsh rule of the *Bollard* and *Kwiatkowski Cases* (*supra*).

Judgment, therefore, directed for the defendant, dismissing the complaint without prejudice to the commencement of an action for reformation if the plaintiff be so advised.