## ADAMOS v. NEW YORK LIFE INS. CO. *
### No. 7424.

District Court, W. D. Pennsylvania.
Nov. 3, 1933.

Alan S. Christner and John D. Meyer, both of Pittsburgh, Pa., for plaintiff.

Smith, Buchanan, Scott & Gordon, of Pittsburgh, Pa., for defendant.

SCHOONMAKER, District Judge.

This is an action at law by George A. Adamos, beneficiary named in four policies of

*For opinion denying rehearing, see 5 F. Supp. 1019.

insurance issued by the New York Life Insurance Company, each in the sum of $5,000 upon the life of Andy Adamos, father of the beneficiary.

The defendant has set up an equitable defense under section 274b of the Judicial Code (28 USCA § 398), contained in the "New Matter" set forth in the defendant's affidavit of defense. To this "New Matter" the plaintiff has replied, and the equitable issue was tried before the court on the new matter set out in the defendant's affidavit of defense, plaintiff's reply, and the proofs.

By the equitable defense, the defendant is seeking to have the four insurance policies declared null and void and canceled, by reason of alleged false answers in the application for this insurance.

### Findings of Fact.

From the pleadings and proofs upon the equitable issue, we find the facts to be as follows:

(1) The defendant issued and delivered to Andy Adamos four insurance policies, each in the sum of $5,000, two dated April 8, 1932, and delivered April 15, 1932, being Nos. 11,-773,180 and 11,773,181. The other two, namely, Nos. 11,780,717 and 11,780,718, were dated April 19, 1932, and were delivered during the latter part of May or the first part of June, 1932. Copies of these policies are attached to plaintiff's statement of claim.

(2) The medical examination for all of these policies was made on April 6, 1932, by Dr. J. C. Wiley. The answers of Adamos to the medical questions are in writing and signed by him, four copies of which are attached to the four policies of insurance that were delivered to him. In part II of the application for the above insurance, immediately over Adamos' signature, there appears, among other things, the following:

"On behalf of myself and of every person who shall have or claim any interest in any insurance made hereunder, I declare that I have carefully read each and all of the above answers, that they are each written as made by me, and that each of them is full, complete and true, and agree that the Company believing them to be true shall rely and act upon them."

(3) In the said medical examination blank (copy of which is attached to the policies), Andy Adamos was asked and answered the following questions, to wit:

"7. A. Have you ever had any accident or injury or undergone any surgical operation? No.

"B. Have you ever been under the observation or treatment in any hospital, asylum, or sanitarium? No.

"D. Have you ever been found to have a high blood pressure? No.

"F. Have you gained or lost in weight in the last year? No.

"8. Have you ever consulted a physician or practitioner for or suffered from any ailment or disease of

"C. The Stomach or Intestines, Liver, Kidneys or Bladder? No.

"10. Have you ever consulted a physician or practitioner for any ailment or disease not included in your above answers? No.

"11. What physicians or practitioners, if any, not named above, have you consulted or been examined or treated by within the past five years? None."

(4) That each of the answers quoted above in paragraph 3 hereof is false; the actual facts being that on March 14, 1926, he fell while working for the Jones & Laughlin Steel Corporation, fractured certain of his lumbar vertebrae, fractured both of his femurs and his left tibia. As a result of these injuries, he underwent a surgical operation by Dr. H. E. McGuire in South Side Hospital in Pittsburgh, where he was confined from March 14, 1926, to July 8, 1926. From the time of this accident until his death, Adamos collected workmen's compensation from the Jones & Laughlin Steel Corporation as for total disability.

(5) In addition to this accident and hospital experience, and as the result of the accident noted in paragraph 4, said Andy Adamos repeatedly, prior to the delivery to him of the insurance policies in question, consulted physicians and was under observation or treatment in hospitals, particular incidents of which are as follows: In 1930 or 1931, Adamos was treated six or seven times by Dr. Spanos for hypertrophy of the prostate gland. In November, 1931, Dr. D. A. Belinky was called to Adamos' residence, examined him, and prescribed for him. At this time Adamos was confined to bed and was complaining of pain in his back and abdomen. He diagnosed the case as sacroiliac arthritis and a badly constipated bowel. Again, in December, 1931, Dr. B. T. Owens was called to Adamos' home to attend him, found him in bed, and complaining of pains throughout his abdomen. Dr. Owens diagnosed the case as chronic appendix. Dr. Owens attended Adamos the same month, found him still in bed with pain and much weaker than on the

previous occasion. In February, 1932, Adamos again consulted Dr. Spanos, calling at the doctor's office and complaining of pain in his abdomen, saying to Dr. Spanos that he had been visiting different doctors; that some of them told him he had a bad appendix; that others told him he had gallstones, or something of that kind. Dr. Spanos then sent him to St. Francis Hospital to Dr. Andrew D'Zmura. On February 9, 1932, Adamos entered St. Francis Hospital in Pittsburgh, left there February 12. He was examined there by Dr. D'Zmura, who diagnosed Adamos' case as inoperable carcinoma involving the prostate gland and surrounding structures. The only prescription that Dr. D'Zmura was able to give him was a narcotic for the relief of pain. At the time he was in St. Francis Hospital under observation of Dr. D'Zmura, he was very weak, was complaining of pain, and had lost weight. Some time while Adamos was in St. Francis Hospital he was examined by Dr. G. H. Davison, a specialist in genito-urinary diseases, who diagnosed his case as advanced carcinoma. On February 23, 1932, Dr. Owens was again called to Adamos' house to attend him, found his condition at that time to be weaker, that he seemed to have lost weight. Dr. Owens also felt a mass in the lower left abdomen, and suspected carcinoma of the rectum and lower bowel. On April 18, 1932, Dr. M. R. Hadley was called to attend Adamos. At that time, Dr. Hadley found Adamos in marked pain, lying in bed and groaning. This doctor did not make a definite diagnosis, but had in his mind the opinion of cancer, and gave a narcotic to relieve the pain. Dr. Hadley referred the case to Dr. Langer in the West Penn Hospital. Adamos remained at the West Penn Hospital until April 29. While there, Dr. C. B. Schildecker, Dr. C. H. Ketterer, Dr. Heinz Langer, and others examined him. These doctors all found Adamos to be suffering from carcinoma in a very advanced stage.

(6) On July 8, 1932, Adamos died, and the official death certificate (Exhibit T offered in evidence) showed that death was caused by carcinoma of sigmoid of eight months' duration.

(7) In each of the policies of insurance in part I of the application (copy of which is attached to the policy) it is provided:

"It is mutually agreed as follows: 1. That the insurance hereby applied for shall not take effect unless and until the policy is delivered to and received by the applicant and the first premium thereon paid in full during his lifetime, and then only if the applicant has not consulted or been treated by any physician since his medical examination."

As a matter of fact, before the last two policies dated April 19, 1932, were delivered to Adamos, he had consulted a doctor and had been in the hospital. Dr. Hadley was called to attend him on April 18, 1932; and he was in the West Penn Hospital from April 21 to April 29, 1932, inclusive, where he was examined by a number of doctors.

### Conclusions of Law.

From these facts, we conclude, as a matter of law:

(1) That all the policies sued upon are voidable because of misrepresentation and fraud.

(2) That the two policies dated April 19, 1932, are vitiated by reason of Adamos not having disclosed, when they were delivered to him the latter part of May, or the first of June, 1932, his medical history since his examination on April 6, 1932.

(3) That the defendant is entitled to have the four policies sued upon delivered to it and canceled.

(4) That this equitable relief bars the plaintiff from any recovery upon the policies sued upon.

### Discussion.

 This is a very plain case of fraud upon the insurance company. The plaintiff in this case offered evidence to show that Adamos was a Greek and that he did not understand well the English language. But we are of the opinion, from the evidence in the case, and have found, that Adamos falsely answered the questions as to his medical history. We are of the opinion, in addition to that, that he is bound by the answers appearing in his application; he had no business to sign his name to those answers in his application unless he did understand what was being said to him and what he was signing.

The courts generally hold that, by signing an instrument such as an application for insurance policy, the signer binds himself and those claiming through him to the instrument as actually written. Stanulevich v. St. Lawrence Life Ass'n, 228 N. Y. 586, 127 N. E. 315; Kwiatkowski v. Brotherhood of American Yeomen, 243 N. Y. 394, 153 N. E. 847; Erickson v. Knights of the Maccabees, 71 Colo. 9, 203 P. 674; Lauze v. New York Life Insurance Co., 74 N. H. 334, 68 A. 31; Emanuele v. Metropolitan Life Insurance Co., 137 Misc. 542, 242 N. Y. S. 715; Goldberg v. Knickerbocker Insurance Co., 82 Pa. Super.

Ct. 302; New York Life Insurance Co. v. Fletcher, 117 U. S. 519, 6 S. Ct. 837, 29 L. Ed. 934; Aetna Life Insurance Co. v. Moore, 231 U. S. 543, 34 S. Ct. 186, 58 L. Ed. 356; Raives v. Raives (C. C. A.) 54 F.(2d) 267.

The medical questions asked of Adamos in the medical examination application are all matters of fact within his knowledge, and required no technical training or education on his part to answer. We are of the opinion that he is clearly bound by them, and that these policies of insurance must be vacated and set aside.

The conclusion we have arrived at in this case, that the false answers of Adamos to the medical questions in his application for insurance void these policies, is fully supported by the opinion of the Circuit Court of Appeals in the case of New York Life Insurance Co. v. Marotta, 57 F.(2d) 1038.

■ In addition to that, it may be noted that the Supreme Court of the United States has held that an applicant for insurance must inform the insurer when delivery of a policy is tendered to him of any pertinent facts bearing on his health which have occurred between the date of his medical examination and delivery of the policy. Stipcich v. Metropolitan Life Insurance Co., 277 U. S. 311, 48 S. Ct. 512, 72 L. Ed. 895.

A decree may be submitted in accordance with this opinion.