## GREER v. HEISER.

1. IRRIGATION — AMENDING GENERAL DECREE AWARDING PRIORITIES.— An action brought by the owner of an irrigating ditch against the owners of two similar ditches, praying that the general decree rendered in pursuance of the act of 1881 be so amended as to give the plaintiff's ditch priority over the ditches of the defendants, said decree having awarded the priorities to the defendants, was maintainable under section 342 of said act, it appearing to have been instituted within four years next after the general adjudication, notwithstanding the facts that plaintiff had failed to file his claim to priorities previous to the general adjudication, or within two years thereafter as required by sections 1 and 26 of said act.

2. LIMITATIONS OF THE ACT OF 1881 CONSTRUED.— The failure of the plaintiff to file his claim for water previous to the adjudication, or for a review of the decree within two years afterwards, as required by the statute, did not raise the legal presumption that he had no rights, or that he intended to waive any rights he may have had; and such a case is not within the bar of the statute, notwithstanding the seeming want of harmony between the different sections thereof.

3. VARIANCE AND INCONSISTENCIES BETWEEN COMPLAINT, EVIDENCE AND DECREE.— Where the allegations of a petition for equitable relief in a cause are denied by the answer, and there is no sufficient proof of any material allegation, or of any material fact necessary to support a decree for the relief sought, and the decree rendered is at variance with both the evidence and the allegations of the petition, it cannot be sustained; as where a petition claimed priority for a ditch located on section 33, township 9, alleging that the work of construction was commenced in April, 1875, and continued with diligence and without intermission until completed, whereas the testimony produced showed the construction of a ditch on section 4, township 10, there being no proof whatever that the ditch described

in the petition had any existence previous to the year 1887, a period of at least ten years after the date alleged, or that the work of construction was commenced in either 1874 or 1875, and the decree, in addition to the foregoing inconsistencies, awarded the plaintiff's ditch priority, dating from April, 1874.

4. CHANGING HEAD OF DITCH, OR BUILDING NEW DITCH, NOT A FORFEITURE OF RIGHTS.— Where an appropriation of water-rights has been properly made, the changing of the head of the ditch to a point higher up the stream, or the building of a new ditch to carry the water of the former appropriation, works no forfeiture.

5. PRIOR RIGHTS NOT LOST BY CHANGING METHOD OF CARRYING WATER. The mere fact that a person, by a parol agreement with a neighbor, obtained his water for several years through the latter's ditch, does not affect his right to receive water through his own ditch as against the neighbor's grantee.

6. CORRECT BASIS FOR DECREE OF PRIORITY.— The quantity of water actually appropriated by a party at the date claimed therefor, and not the capacity of his ditch ten or twelve years afterwards, should be the basis of the decree adjudging his priority.

*Appeal from District Court of Douglas County.*

Mr. W. T. ROGERS and Mr. D. C. WEBBER, for appellants.

Mr. WILLIAM DILLON and Mr. JOHN HIPP, for appellee.

REED, C.   This was a suit instituted in November, 1887, by appellee filing a bill or petition asking that a general decree made and entered of record on the 10th day of December, 1883, establishing the priorities and appropriations of water in the different irrigating ditches in water district No. 8 be amended, and that the irrigating ditch of plaintiff (appellee) be decreed entitled to priority over the ditch of appellant, known as ditch No. 82, and the "McCracken ditch," and ditch No. 83, known as the "Smith ditch."

It appears that, at the time the respective rights of the different ditches were adjudicated, appellee allowed the matter to go by default, making no appearance and no claim, and offering no testimony in regard to any ditch or water-right whatever, the reason given in the petition being that he had only recently, and within the year, learned

that the respective rights had been adjudicated and a decree entered; that he " never had any *actual notice* of any such proceedings and was not aware that such proceedings were being had." It is alleged in the petition that appellee was the owner of a ditch having its head at East Cherry creek *on the southeast quarter of the southeast quarter of section 33, in township 9, south; that the ditch* had a width of one and one-fourth feet on the bottom and two feet on the top, and a depth of eight inches, with a fall of thirty inches to the half mile; that it was eighty-nine rods long, irrigating thirty or thirty-five acres; that the work of constructing the ditch was commenced in April, 1875, by building a dam across the creek, and that the work was continued from that date with diligence and without intermission until it was finished. No date is given of the time of the completion of the work, and nothing by which the court can judge in regard to diligence, nor is there anything in the testimony showing when the appropriation of such water was concluded. It is stated that forty-nine rods in length of the ditch is on the west side of the creek and forty rods on the east side. It is alleged that the construction of the McCracken and Smith ditches was not commenced until after the commencement of his ditch, but no date is given as to when the construction of such ditches commenced. It is further alleged that the two ditches had been decreed priority over his ditch, and asking that the decree be so amended as to establish the priority of his ditch over the ditches mentioned. The court found for plaintiff (appellee), and a decree was entered giving the ditch priority over the ditch of appellant, a portion of such decree being as follows: " A ditch constructed for the purposes of irrigation, to take its supply of water from East Cherry creek in said water district No. 8, and having its headgate on the northeast quarter of the northeast quarter of section 4, in township 10 south, said ditch being eighty-seven rods in length, and having a width of one and one-fourth feet on the bottom and two feet on the top, and a depth of eight inches,

on a grade of thirty inches to the half mile, and to be held to have appropriated as much water *as will flow in a ditch of the* size aforesaid. * * * Such appropriation to date from the 30th day of April, 1874."

There is a very grave question lying at the foundation of this proceeding, viz., whether, in a proceeding of this kind against two ditches or individuals, an adjudication could be had modifying the general decree regulating the distribution of water in the entire district. But we are of the opinion that the action is warranted by section 1796, General Statutes, page 583, when, as appears to be conceded in this case, no interests are involved or affected, save those of persons who are parties to the adjudication. This section does not appear to be in harmony with other portions of the statute. By section 1763, General Statutes, page 572, it is provided that "any person * * * owning or claiming any interest in any ditch, canal or reservoir within any water district, shall, on or before the 1st day of June, 1881, file with the clerk of the district court having jurisdiction of priority of right to the use of water for irrigation in such water district, a statement of claim under oath."

Section 1768, General Statutes, page 575, provides that the clerk of the court having jurisdiction shall cause a notice to be published four consecutive weeks in a newspaper which "shall notify all persons * * * interested as owners in any ditch, canal or reservoir in such water district, to appear at said court at the time so appointed and file a statement of claim under oath, in case no statement has been before filed by him."

Section 1772 provides for the appointment of a referee to take the testimony. Section 1773 prescribes the notice to be given by the referee. Section 1774 requires proof of said notice to be made by affidavit of referee. The statute also provides that, unless suit be brought to modify such decree within two years, the party shall be barred.

Nothing having been shown by evidence to the contrary,

it is a legal presumption that proper proceedings were had by notice to give the court jurisdiction under the statute; hence the allegation in the petition that appellee never had any actual notice, etc., can be of no avail; and appellee, having filed no claim or asserted any right whatever to water, and having allowed the matter to go by default, might be held concluded by the decree as *res adjudicata*, as in other cases, unless the decree could be successfully attacked for fraud or irregularity, were it not for the language of the subsequent section (1796): "Nothing in this act, or in any decree rendered under the provisions thereof, shall prevent any person, etc., * * * from bringing and maintaining any suit or action at law whatever, hitherto allowed in any court having jurisdiction to determine any claim of priority of right to water by appropriation thereof, for irrigation or other purposes, at any time within four years." This would seem to take cases like the one at bar out of the general rule, and allow the prosecution thereof within the statutory limit of time. This being the case, failure to file claim for water, as required by the statute, would not raise the legal presumption that the party failing to file had no rights, or that he intended to waive any rights he may have had.

We do not think the decree entered in this case can be sustained.

1. There is a fatal variance between the allegations and the proof, and the decree follows neither.

2. There is no sufficient proof of material allegations or of material facts to support the decree. The allegation in the petition in regard to the ditch is: "Said ditch has its head on said Cherry creek, on the southeast quarter of the southeast quarter of section 33, township 9," etc. It is shown by the proof that in either 1874 or 1875 appellee constructed a dam across the stream at the point designated in the petition. The allegation in the complaint is that the same was done in 1875. The decree of priority fixes it April 30, 1874. At such dam, the evidence shows, water

was taken out on both sides of the stream. A short ditch, some forty rods in length, on the west side, was constructed by plowing three furrows, two of which were turned out by the plow, and the third removed in some other manner. This ditch discharged into and ended at a gulch through which the water returned to the stream. In regard to the ditch on the east side, the testimony is very indefinite and unsatisfactory, but it seems to establish the fact that there was a small ditch or single furrow that carried water. This is the most liberal extent to which the testimony of appellee can be carried, while testimony of the appellant would show no application of water, or of hardly any. The testimony of Mr. McCracken, a witness for appellee, shows great familiarity with the subject, and great fairness. He says: " Heiser's ditch, before I built my ditch, would probably cover fifteen or twenty acres." This estimate is the only one we have of the extent of land under the ditch, and must be held to include all the land that could be irrigated from it. He is the only witness who testifies to the existence of a ditch on the east side of the stream capable of carrying water. He says: " I do not remember definitely; I know that it was a ditch that carried water." This was the condition of affairs prior to and at the time of the construction of the McCracken ditch in 1876. The fact that upon an allegation of priority attaching April, 1875, a decree was entered establishing a priority dating April 30, 1874, is one of such importance that it should not be overlooked in discussing the variance between the allegations, proof and decree, but is unimportant on the merits of the controversy, as either date is prior to the appropriation by the McCracken ditch.

It is shown by the testimony, and not disputed, that after the construction of the McCracken ditch by a parol agreement with McCracken, the owner, appellee took his water from that ditch, and was entitled to the use of the water of that ditch two days in each week; that at some date, not definitely fixed, by a freshet, the dam of appellee

was carried away, and "a large hole washed out," so that water could not be discharged into the ditches; from that time, or the time of the construction of the McCracken ditch, no water was carried or used on the east side until the year 1887, and the testimony of witnesses shows that no water was taken from the creek by the ditches of appellee and used on the land for ten or twelve years previous to the trial until the year 1887. The short ditch on the west side was only available by discharging the water into it from the McCracken ditch. The use by appellee of water from the McCracken ditch continued until the year 1882, when appellant became the owner and refused to recognize the pre-existing arrangement between McCracken and appellee. In 1887 appellee constructed an entirely new ditch, starting from near the head of the McCracken ditch on the northeast quarter of the northeast quarter of section 4, in township 10, running below the McCracken ditch some forty rods, then by a flume crossing the creek to the east side to cover and irrigate land on that side, the aggregate area covered by the ditch being, as testified, thirty or thirty-five acres.

There is no proof or pretense that the ditch described in the petition, forty-nine rods long on the west side and forty rods long on the east side, fifteen inches in width on the bottom, two feet wide on the top and eight inches deep, had any existence prior to the year 1887, nor that the construction of any such ditch was commenced in either 1874 or 1875, "and continued with diligence and without intermission until the same was accomplished." Nor was there in the petition any allegation in regard to a ditch commencing on section 4, township 10, yet the decree established a ditch starting at that point and awards it priority, dating April 30, 1874, while the proof establishes a different appropriation in extent at another place, of water carried in other ditches, and covering only fifteen or twenty acres of land.

The allegations of the petition were denied in the answer. The issues thus formed were the questions of fact to be

tried. Not a material allegation was established by the evidence, and the decree is at variance with both the evidence and the allegations of the petition. In *Miller v. Hallock*, 9 Colo. 551, it was· said: "There was a fatal variance between the allegation of the complaint and the proofs. In such a case it is not enough that the evidence of the plaintiff show a case that calls for some relief; to entitle him to judgment he must show himself entitled to the relief called for by the facts stated in his complaint." "The allegations of the complaint, the evidence and the findings should correspond in legal intent." *Tucker v. Parks*, 7 Colo. 62; *Gregory v. Haworth*, 25 Cal. 656; *Mendran v. Goux*, 51 Cal. 151.

The pleadings should have been reformed or the proceeding dismissed. We do not deem the fact material that appellee changed the head of the ditch to a point higher up the stream, nor that he built a new ditch in which to carry the water of a former appropriation, if such appropriation had been properly made. The questions to be determined were:

1st. The appropriation of water and the date of such appropriation.

2d. The extent of such appropriation.

The allegations of the petition were in regard to the rights claimed and asserted based upon an appropriation of water, and construction of a ditch shown to have been in 1887. The evidence given was in regard to both the condition of affairs as they existed at the time of the original appropriation, and the condition of affairs after the construction of the ditch in 1887, while the decree was based, not upon the original appropriation, but the claim and appropriation of 1887, and in one notable particular followed the allegations in the complaint and entirely disregarded the evidence.

It is said in the decree in describing the ditch, "The said ditch being eighty-seven rods long (instead of eighty-nine, as testified), and having a width of one and one-fourth feet

on the bottom and two feet on the top, and a depth of eight inches." The only testimony given in regard to the size of the ditch was that given by appellee in which he says, "*I believe it is about two feet deep and a foot and a half wide on the bottom.*"

It is evident from the facts established that the petitioner would have been, upon proper allegations and issues, entitled to some decree establishing his prior right to some water from the stream. It is contended that by reason of his abandonment of the ditches by him constructed, prior to the construction of the McCracken ditch, he abandoned his rights of priority. This contention cannot prevail. The change in the method of carrying the water could not affect his right to a priority. It appears that by parol agreement made with McCracken, his prior right to an undefined quantity of water was conceded by that agreement, and it was agreed to be two-sevenths of the water carried in the McCracken ditch, or the use of all the water carried by the ditch two days in each week. The failure of appellant to recognize the McCracken agreement to carry the water could not affect the right of appellee, but at most could only compel him to find some other method of conveying it. See *Thomas v. Guiraud*, 6 Colo. 533. In section 6 of article 16 of the state constitution it is declared: " The right to divert unappropriated waters of any natural stream for beneficial uses shall never be denied. Priority of appropriation shall give the better right as between those using the water for the same purpose."

" To constitute a legal appropriation, the water must be applied within a reasonable time to some beneficial use. * * * The diversion ripens into a valid appropriation only when the water is utilized by the consumer." *Wheeler v. Irrigation Co.*, 10 Colo. 582; *Seiber v. Frink*, 7 Colo. 154; *Platte Water Co. v. N. Colo. Irrigation Co.*, 12 Colo. 531; *Farmers', etc. Co. v. Southworth*, 13 Colo. 115.

From April, 1874, until 1876 must be deemed ample time in which to have constructed the cheap and limited ditches

of appellee. And the water then applied, viz., sufficient for fifteen or twenty acres, must be taken as the extent of the appropriation; consequently the extent of appellee's priority should have been deemed to be water sufficient for fifteen or twenty acres, or the equivalent of two-sevenths of the water carried by the McCracken ditch. No testimony was introduced to establish the quantity of either.

The arbitrary decree allowing appellee at all times sufficient water to fill a ditch of the capacity named in the decree, regardless of the amount of the appropriation, was erroneous. The amount actually appropriated in 1874 or 1875, and not the capacity of the ditch in 1887, should have been the basis of the decree on proper issues. A ditch of the size and with the fall as described in the decree is capable of carrying nearly water enough for one hundred and sixty acres, certainly enough for one hundred acres. Its capacity may be greater than that of the McCracken ditch, and may be greater than the amount of water ordinarily carried in the stream at that point.

The prior right of appellee should have been limited in the decree to either the proved quantity requisite for fifteen or twenty acres or the quantity agreed upon with McCracken.

We advise that the decree be reversed and cause remanded for a new trial in conformity with the views here expressed.

RICHMOND and BISSELL, CC., concur.

PER CURIAM. For the reasons stated in the foregoing opinion the judgment is reversed.

*Reversed.*