[No. 4361.]

THE RUBIE COMBINATION GOLD MINING COMPANY v. THE PRINCESS ALICE GOLD MINING COMPANY.

1. **Contracts—Deeds—Fraud—Cancellation—Return of Purchase Money.**

    In an action to cancel a deed the delivery of which was alleged to have been procured by defendant's fraud, where part of the purchase price had been received by plaintiff it was incumbent on plaintiff to offer to return the money received.

2. **Practice—Pleading—Cancellation of Deed—Damages.**

    In an action to cancel a deed on the ground of fraud where no damages or legal relief is asked and no facts are alleged in the complaint upon which damages could be awarded, if plaintiff fails to obtain the equitable relief prayed for, he is not entitled to a judgment for damages even though the evidence might show that he was entitled to some relief.

3. **Same—Purchase Price Not Due.**

    In an action to cancel a deed on the ground that its delivery was obtained by defendant's fraud, where part of the purchase price had been paid, and plaintiff fails to obtain a decree cancelling the deed, he is not entitled to a money judgment for the balance of the purchase price, where such balance was not due at the time the action was instituted.

4. **Corporations — Conveyances — Escrow — Modification of Contract—Authority of President.**

    The entire capital stock of a corporation belonged to a man and his wife except enough held by a daughter to qualify her as a director, and the three constituted the board of directors, the husband being the president and the wife the secretary and treasurer. The corporation executed a deed to mining property and placed it in escrow to be delivered upon the payment of certain sums. Afterwards by agreement between the grantee and the husband as president of the corporation and with the con-

sent of the wife the escrow contract was modified and the deed delivered upon the immediate payment, before it was due, of a smaller sum than was called for in the contract. Held, that the modification of the contract and the delivery of the deed was binding on the corporation, notwithstanding no formal action was taken by the board of directors authorizing the modification of the terms of the contract.

*Appeal from the District Court of El Paso County.*

Messrs. ADY & SHEAFOR, for appellant.

Mr. T. M. S. RHETT, for appellee.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

Action to cancel a deed to mining property, to forfeit a lease, and for an accounting. The Rubie Combination Gold Mining Company, being the owner of the property, acting through its board of directors, in which such power was vested, gave to James A. Twitchell a lease and bond on the Lafayette mining claim, situate in the Cripple Creek mining district. The term of the lease was for fifteen months. It was in the ordinary form and provided for the payment of a specified royalty. The bond was conditioned upon payments by the grantee to the grantor of the sum of $20,000, before the end of the lease, such payments to be made at different times and in different amounts, which were specified therein. About four months after they were executed, the lease and bond, with the consent of plaintiff, were transferred and assigned by Twitchell to The Princess Alice Gold Mining Company, which, having succeeded to his rights and assumed his obligations thereunder, at once took possession of, and operated, the mine under the lease. Before this action was begun it had paid upon the agreed purchase price the sum of $15,000.

In pursuance of the terms of the bond and lease, the plaintiff company, by its board of directors, executed a deed to the mining claim and placed the same in escrow with the First National Bank of Colorado Springs, to be delivered to the Princess Alice Company, as the assignee of Twitchell, upon compliance by it with the terms agreed upon, which were endorsed on the envelope enclosing the escrow. The first payment of $5,000 upon the bond was made in accordance with the agreement, and a short time before the second payment of $5,000 became due, upon the initiative of the plaintiff company, through its president, negotiations were set on foot with the defendant company, acting by its authorized agent and manager, which resulted in a modification of the terms of the bond. This new agreement was that if the defendant at once paid in cash $10,000, plaintiff would accept the same in lieu of the sum of $15,000 which was still due under the terms of the original agreement, but not payable for several months. This proposition was accepted by defendant, the $10,000 were paid, and the bank, under the written instruction of plaintiff's president, delivered to defendant the escrow deed, which was afterwards duly recorded.

The plaintiff thereupon brought this action, alleging, among other things, that the defendant had not observed the terms of the lease with respect to the payment of royalty, and that surreptitiously, fraudulently, and against the consent of plaintiff, it obtained possession of the escrow; and in the prayer for relief asked that the $15,000 of the purchase money already paid by the defendant be declared forfeited, that the deed be cancelled and held for naught, and that an accounting be had to ascertain the amount of royalty still due. The trial court found the facts in favor of the defendant and dismissed the action.

Upon the trial, and also here, plaintiff abandoned its claim for a forfeiture of the lease and for an accounting, and its position now is that there should have been a cancellation of the deed because it was delivered fraudulently and without its consent; or, if this cannot be done in accordance with the principles of equity, that a money judgment be given in its favor for the entire sum of $15,000; or if, in the circumstances of the case, it is inequitable either to cancel the deed or to require defendant to pay the entire sum of $15,000 after it has paid $10,000 of that amount to plaintiff's president, then that plaintiff should have a money judgment for the $5,000 remaining unpaid on the purchase price, together with interest thereon.

1. It is well to bear in mind that this is an action for the cancellation of a deed which was in escrow, and, as alleged, was obtained from plaintiff by defendant's fraudulent conduct. That an escrow delivered without authority, or obtained fraudulently, conveys no title, is elementary. Of the entire consideration of $20,000 which the defendant agreed to pay the plaintiff for the property described in the escrow deed, $15,000 were paid by defendant, and received by plaintiff, before the action was brought. It appears in the complaint, as well as by the proof, that it was within the power of the plaintiff to place the defendant *in statu quo* by returning the $15,000 which it received. There is, however, no allegation in the complaint, nor was there at the trial, an offer to return this amount. Indeed, one prayer of the complaint is that this payment be declared forfeited to plaintiff. That it was incumbent upon plaintiff, under the facts of this case, to place defendant *in statu quo* is established by an unbroken line of authorities.—*Hamill v. Thompson,* 3 Colo. 518; *Bliley*

11

*v. Wheeler*, 5 Colo. App. 287; 11 Am. & Eng. Enc. Law (2d ed.), 160.

Appellant, however, relies upon *Jackson v. Lynn*, 94 Ia. 151, reported, also, in 58 Am. St. Rep. 386, as an authority for its contention that it was not necessary, either in the complaint or at the trial, to offer to return that part of the purchase money which it had received. The court, speaking by Mr. Justice Deemer, bases its decision that the plaintiff there was not required to tender back the consideration he had received upon the fact that the action was to set aside a stolen deed in which the plaintiff was insisting upon the letter of his contract. The learned judge, observed, however, that if the action were one to rescind a contract upon the ground of fraud, plaintiff would be compelled to make tender back of all that he had received, which is exactly the case at bar.

Appellant, moreover, further contends that the company did not receive or get the benefit of the last payment of $10,000 made by the defendant, although it was paid to its president and he may have appropriated the same to his own use. The findings of the court must have been in favor of the appellee upon this question of fact, and it is quite clear, from the record, that this sum was ultimately deposited to the credit of plaintiff's bank account.

2. It is not necessary, under the facts of this case, to determine whether, if the complaint contained the necessary averments, the court might award the plaintiff relief in the way of damages. The pleading was framed entirely upon the theory that plaintiff was entitled to a rescission, and there are no allegations upon which a judgment awarding damages could be rendered, even if the proof showed plaintiff was entitled thereto. Courts have sometimes awarded to a plaintiff damages when in his complaint he has asked both legal and equitable relief, when the latter

could not be given, but it is only where plaintiff in his complaint has shown that he is entitled to that kind of relief. It is not enough that his evidence showed that he has made a case that calls for some relief. But aside from this, if proper allegation had been made for a money judgment, plaintiff was not entitled to recover the balance of the purchase price in this action, for such balance was not due at the time it was instituted.—*Miller v. Hallock,* 9 Colo. 551; *Greer v. Heiser,* 16 Colo. 306, 312; *Mullen v. McKim,* 22 Colo. 468, 474.

Under the pleadings and the evidence we are of opinion that plaintiff was not entitled to any sort of relief, and that the court was right in dismissing the action. In coming to this conclusion we have not overlooked the fact that no formal action was taken by the board of directors of plaintiff company authorizing a modification of the terms of the bond. The minutes of the company do not show that the act of its president in delivering the deed to the defendant was expressly authorized, but it is clear that negotiations leading up to the subsequent agreement were conducted in the presence of two of the three directors of the plaintiff company, who are substantially the owners of every share of the capital stock, and that they consented to accept the $10,000 cash and deliver the escrow. The plaintiff company was a sort of family affair. All of its capital stock was owned by a husband, his wife—the former the president, the latter the secretary and treasurer—and by her daughter, who held stock enough to qualify her as a director and these three constituted the board of directors. The president was permitted by the other directors and stockholders to conduct all its business in connection with this transaction, and was clothed with apparent authority to take the action which he did in this case. No question is made as to the authority

of the board to execute the deed, the only contention being that the president had no authority to change the terms of the escrow.

Plaintiff company received and had the benefit not only of the first payment of $5,000 on the purchase price, but also the last one of $10,000, knowing how it was received, and it would be inequitable to permit the plaintiff to rescind this contract while retaining such purchase money. Supporting the conclusion at which we have arrived, see *Senour Mfg. Co. v. Clarke,* 96 Wis. 469.

The judgment is affirmed.

*Affirmed.*