## No. 13,039.

### BANKERS BUILDING AND LOAN ASSOCIATION v. WATSON.

(29 P. [2d] 711)

Decided February 13, 1934.

Mr. Ira C. Rothgerber, Mr. Walter M. Appel, for plaintiff in error.

Mr. Foster Cline, Mr. George A. Trout, for defendant in error.

*In Department.*

Mr. Justice Holland delivered the opinion of the court.

The parties will be referred to as the association, Watson and Harris.

Watson was plaintiff in the trial court wherein she filed her complaint, as amended, against Harris and the association to cancel a deed, and release deed of trust.

Watson was the owner of an improved lot and one-half situated in the City and County of Denver. On May 20, 1929, at her place of business, a restaurant, she had a conversation with Harris concerning the sale or trade of her property at which time she signed an agreement to pay a lumber bill, furnace man, and taxes for 1928, and Harris and Scott agreed to assume an $800 mortgage to the Midland Savings Bank, to pay $400 in cash, and de-

liver 58 shares of stock in the Paramount Life Company, for a deed to the Watson property. On the following day, Watson signed a warranty deed to Harris conveying said property and furniture in the house, except a player piano, subject to a deed of trust in the sum of $800. This deed was delivered to Harris. Harris thereupon applied to the Bankers Building and Loan Association, herein called the association, for a $2,200 loan upon said property. An officer of the association inspected the premises and agreed to make the loan, which was thereafter consummated on or about May 24, 1929, after an examination of the title. The association paid certain expenses of the loan transaction, taxes that were due and unpaid, and paid Harris $853, after deducting and retaining $603.16, the balance of the loan to the Midland Savings Bank, and $425 for the settlement of liens against the property. Thereafter, the Midland Savings Bank refused to accept the balance due them and their deed of trust is still unreleased.

On June 25, 1929, Watson filed her original complaint against Harris to cancel the warranty deed and for release of the deed of trust alleging, in substance, that she never signed the deed nor delivered same and did not know that it was a deed, but that through false representation, she had been induced to sign papers purporting to be an arrangement by which she was to list her property with Harris. On October 28, 1929, she filed an amended complaint making the association a party defendant. On June 14, 1930, she filed her second amended complaint alleging that the loan placed on the property was for the purpose of cheating and defrauding her, and prayed that the deed of trust securing said loan be cancelled.

Harris and the association filed their separate answers. Harris denied any misrepresentation to Watson; alleged tender to Watson of $400 in cash and the certificate of stock of the Paramount Life Company and the

refusal of Watson to accept. The association answered alleging the making of the loan to Harris after an examination of the title; the distribution of certain moneys out of the loan, as well as the tender of other moneys, and alleged no knowledge concerning the transactions between Watson and Harris, no reason for being put upon inquiry as to such transactions, and prayed for an order requiring Watson to authorize the payment by it to the Midland Savings Bank, the sum of $603.16; that Watson be required to secure a release of the mortgage to the Midland Savings Bank.

After a hearing, the court entered judgment on findings to the effect that the plaintiff never knowingly signed a deed and never knowingly or at all, delivered the deed to Harris; that the deed was never acknowledged; that Harris secured the loan from the association; that the association negotiated the loan in good faith and without knowledge of any fraudulent acts of Harris, and ordered that the deed from Watson to Harris be cancelled and that upon payment of $178, by Watson to Harris, representing the amount paid by the association at the time of making the loan for taxes and other items, that the deed of trust from Harris to the association be cancelled. The association prosecutes this writ to determine its rights under the deed of trust executed to it by Harris.

Pertinent parts of the evidence disclose that Watson is a woman of French descent and cannot read English; that she had lived in Denver about 16 years and was operating and had operated restaurants during that time; that she had managed her business, had sold and traded same; that she had traded a restaurant for the property here involved and had dealt in shares of stock; that one Mrs. Carry was employed by Watson and wrote and read letters for Watson and was present when Watson signed the papers relating to this transaction and testified that Watson did not ask her to read them to

her. Watson testified that she signed her name to and delivered three different papers to Harris who was accompanied by Scott, but did not know or understand that she was signing a deed. Scott was a real estate man and testified that he was present when the three papers, which are exhibits in this case, were signed and delivered; that the contents of the papers were discussed with Watson and that he read the deed to Watson. After delivering the deed to Scott and Harris, it was taken to Colsman, a notary, who testified that he talked to a lady who was called on the telephone by Scott and took the acknowledgment of the deed over the phone.

The evidence further discloses that after the deed was delivered, Harris made application to Mr. Schayer, president of the association, for the loan. Mr. Schayer inspected the property, approved the application and made the loan for the association after an examination of the title. He testified that the association did not know in whom the title stood at the time of the application, and that he was under the definite impression that he talked to Watson on the property; that Harris told her that he (Schayer) was the man who had come to look at the property to make the loan; and that after the loan was made, a partial disbursement of the money was had in which Harris was paid $853.77.

It is to be noted that the trial court found that, so far as the association was concerned, the loan was negotiated in good faith, and we are unable to understand how the court was able, under the evidence, to strike from under the association some of its substantial rights after finding that it had acted in good faith and was not in any way a party to the transaction claimed by Watson to be fraudulent upon the part of Harris. Unless the association, being an innocent third party, could have been or was first made whole even to the last penny, then the finding and judgment of the trial court is not only wrong in figures, but without foundation as to legal principles.

It is true the trial court conditioned the order cancelling the deed of trust upon the payment by Watson to the association the sum of $178. This does not restore to the association moneys rightfully and legally disbursed in the transaction by the association to Harris, neither does it compensate the association for expenses in connection with the transaction or any possible damages it might have suffered by the transaction.

■■ If a fraud was perpetrated—which we are not deciding—upon Watson by Harris entirely without the knowledge thereof or connection therewith by the association, as is clear from the evidence, then that is a matter between Watson and Harris. Watson admits signing the deed. Then the deed was, when considered by the association, what it purported to be, a true and genuine instrument and was not a false document; it was not falsely made and did not constitute a forgery. If Watson, failing to ascertain what she was signing, and thereby failing to exercise ordinary care and prudence in her transaction, signed the deed, which she admits contains her signature, and then carelessly permitted that signed document, genuine upon its face, to be placed where it could be used in the course of a bona fide business transaction, she cannot be excused. If she was innocent and ignorant of the contents of the paper she signed, still she will be held responsible for the results according to the well settled rule that "where one of two innocent persons must suffer from the fraud of another, he who enabled the fraud to be perpetrated will be held responsible for the results." *Trujillo v. Wichita Co.,* 91 Colo. 307, 14 P. (2d) 1009.

■ Watson's inability to read English or understand the nature of the contents of the instruments that she voluntarily signed, is not sufficient ground for her to avoid the consequences of her act when it was possible, as it was here as is shown by the evidence, for her to have had them read to her by her own employee, who

was present at the transaction, before she signed them, and her failure to do so estops her, as against the association, from avoiding the deed on the ground that she was ignorant of its contents. *Erickson v. Knights of Maccabees,* 71 Colo. 9, 203 Pac. 674.

There is no evidence in this case that will support the judgment of the trial court in so far as it affects the association, when the well settled rules of law are applied thereto. The judgment of the trial court as to the association is reversed with instructions to enter a decree relative to the rights of the association in harmony with the views herein expressed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE BURKE concur.