472

### SAVERS FEDERAL SAVINGS AND LOAN ASSOCIATION of Little Rock, Arkansas *v.* FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION of Harrison, Arkansas

88-260                                                    768 S.W.2d 536

Supreme Court of Arkansas
Opinion delivered May 1, 1989
[Rehearing denied May 30, 1989.]

*Hoover, Jacobs & Storey*, by: *O.H. Storey III* and *William C. Mann III*, for appellant.

*Frank H. Bailey, Benjamin F. Mann*, and *Michael Thompson*, for appellee.

DARRELL HICKMAN, Justice. First Federal Savings and Loan of Harrison (First Federal) entered into a loan participation contract with Savers Federal Savings and Loan (Savers). The question on appeal is whether the circuit court was correct in declaring that First Federal effected a "legal rescission" of the contract and was entitled to full restitution of its funds expended, less its return on investment. We find there was no rescission at

law and remand the case for further proceedings.

In 1983, Savers was the lead lender on a $3.31 million construction loan made to Woodlake Manor, a retirement condominium development in Texas. In response to an offering memorandum from Savers, First Federal purchased a 30% participation interest in the loan, which amounted to $981,718.51. The memorandum contained an appraisal which estimated the undiscounted market value of the project at $4,152,800.[1]

Just two months later, it was discovered that several appraisals contained in Savers' loan files did not comply with a Federal Home Loan Bank Board guideline known as R41B. That guideline required an appraiser to take into account the discounted value of the property. Savers wrote to the appraiser on the Woodlake Manor project and asked if his appraisal was prepared in compliance with R41B. He said no, and submitted a supplemental appraisal declaring the value at $2,903,700.

That appraisal presented an immediate problem because the loan exceeded the value of the property. Savers wrote to the appraiser again, challenging the new figure. The point of contention was whether the developer's profit should be deducted in the discounting process. The appraiser agreed not to deduct it, resulting in a new appraised value of $3,572,200 as of August 24, 1984. Savers never informed First Federal of the subsequent appraisals.

The new appraisals had a definite impact on the creditworthiness of the loan. Under the original appraisal, the loan amount was 79.5% of the property value; under the final appraisal, the loan to value ratio was over 90%.

Woodlake defaulted on the loan in 1985 and Savers foreclosed on the property. More than a year later, First Federal discovered the existence of the other appraisals. An officer of First Federal wrote to Savers that if it had known of the new appraisals, it would have stopped disbursements on the loan until the project could be reevaluated. The letter also declared, "we have no other

---

[1] When an appraisal value is "undiscounted," it means no adjustments have been made for costs to be incurred while the property is awaiting sale, such as insurance, taxes, etc.

recourse but to ask Savers Federal to repurchase our participation interest or we will be required to pursue other means to resolve the issue."

Savers refused and First Federal filed suit in Pulaski County Circuit Court. The complaint alleged breach of warranty, breach of fiduciary duty, constructive fraud and mutual mistake. The relief prayed for was rescission or alternatively, for damages.

The trial judge, sitting as factfinder, declared that Savers' use of the original, undiscounted appraisal which did not meet FHLB guidelines was not fraud or a breach of duty. First Federal should have known about R41B just as Savers should have. But the judge did find that Savers breached its fiduciary duty[2] and was guilty of constructive fraud in not informing First Federal of the new appraisals.

As a result of Savers' breach, the judge awarded damages of $876,480.16, which is the amount First Federal paid out, less its return on investment. Savers protested that the award exceeded the damages actually caused by the breach and that the circuit court lacked jurisdiction to grant rescission. The judge refused to compute damages based on causation, declaring he could not compel First Federal to remain in a relationship with an untrustworthy fiduciary. He also stated that First Federal's letter to Savers effected a rescission at law.

We agree with Savers that First Federal's actions did not amount to a rescission at law. Rescission at law is accomplished when one party to a contract tenders or returns to the other party the benefits received under the contract. It simply means a party, by his acts, rescinds the agreement. *Coran* v. *Keller*, 295 Ark. 308, 748 S.W.2d 349 (1988). *See also Herrick* v. *Robinson*, 267 Ark. 576, 595 S.W.2d 637 (1980). The difference in rescission at law and in equity is explained in D. Dobbs, *Pressing Problems for the Plaintiff's Lawyer in Rescission*, 26 Ark. L. Rev. 322 (1972):

> If the plaintiff has adequate grounds for avoiding the transaction, his notice to the defendant that he had done so,

---

[2] The participation agreement provided that Savers would act as a fiduciary in administering and servicing the loan.

accompanied by restoration to the defendant of benefits received by the plaintiff in the transaction, will itself amount to a rescission. This is called rescission at law, meaning rescission under the theory used in law, rather than equity, courts. The theory here is that the court has nothing to do with the rescission of the transaction; that is accomplished by the plaintiff when he notifies the defendant and returns what he has received under the transaction.

■ The plaintiff's restoration to the defendant of benefits received in the transaction constitutes the "tender" requirement. According to Dobbs, many courts hold that tender must be complete and unequivocal. In *Anson* v. *Grace*, 174 Neb. 258, 117 N.W.2d 529 (1962), a purchaser of land sent a "notice of rescission" promising to reconvey the property to the seller. The court held the tender requirement was not met.

■ First Federal's letter did not offer to restore the benefits First Federal received under the agreement. It was an equivocal statement. Since there was no effective tender, there was no rescission.

■ This error might not make a difference if the Arkansas legal system were like most states with courts which deal with questions of both law and equity. But we have separate courts, and it is important to keep the line drawn between what cases belong in circuit court and what cases must be decided in chancery. Since First Federal did not accomplish a legal rescission, the circuit court fashioned an equitable remedy when it allowed rescission and restitution. That could only have been done in a court of equity.

This means the judgment must be reversed and remanded for further proceedings.

Reversed and remanded.