Marvin L. MARTINEZ and Jorene M. Martinez, Plaintiffs–Appellants and Cross–Appellees,

and

Underhill & Underhill, P.C., Attorney–Appellant,

v.

AFFORDABLE HOUSING NETWORK, INC., Senior Entrepreneurs Foundation, E.W. Brossman, and Tom Skaggs, Defendants and Cross–Appellants,

and

Troco, Inc. and Eldon Strong, Defendants–Appellees.

Nos. 01CA1669, 01CA2185, 01CA2188, 01CA2189.

Colorado Court of Appeals, Div. A.

May 20, 2004.

Certiorari Granted March 21, 2005.*

* Justice HOBBS does not participate.

Underhill Law Firm, P.C., Joanne P. Underhill, Dana M. Arvin, Greenwood Village, Colorado, for Plaintiffs–Appellants and Cross–Appellees and Attorney–Appellant.

Wollins & Hellman, P.C., Michael J. Axelrad, Denver, Colorado, for Defendants–Cross–Appellants Affordable Housing Network, Inc., and Senior Entrepreneurs Foundation and E.W. Brossman.

Robert Stuart McCormick, Fort Collins, Colorado, for Defendants–Cross–Appellants Tom Skaggs.

Laff Stein Campbell Tucker & Delaney, LLP, Darrel L. Campbell, Greenwood Village, Colorado, for Defendants–Appellees.

Opinion by Chief Judge DAVIDSON.

In this action involving fraud in the nature of equity skimming, plaintiffs, Marvin L. Martinez and Jorene M. Martinez, appeal from the trial court's entry of a judgment quieting title in favor of defendants Troco, Inc. and Eldon Strong. Defendants Affordable Housing Network, Inc. (AHN), Senior Entrepreneurs Foundation, E.W. Brossman, and Tom Skaggs (AHN defendants) cross-appeal from the judgment and award of damages entered after a jury trial in favor of plaintiffs. In a separate action, which has been consolidated with this appeal, plaintiffs' counsel, Underhill & Underhill, P.C., appeals from the trial's court order entering contempt sanctions against it. We affirm the judgment except as to the award of damages, vacate the contempt order, and remand for entry of a corrected judgment.

Faced with impending foreclosure of their property, plaintiffs met with Skaggs, a representative of AHN. Based in part upon Skaggs's false assertions regarding the non-profit status of AHN, plaintiffs entered into an option agreement with AHN under which AHN would cure plaintiffs' default on the property. As part of this option agreement, plaintiffs delivered a quitclaim deed to AHN. Plaintiffs were told that AHN would attempt to find refinancing for their home and that the deed was for "protection" to be used only in the event that AHN was unable to obtain refinancing for them.

Despite being required to do so under the terms of the option agreement, AHN failed to place the deed in escrow and failed to properly exercise the option.

AHN recorded the deed from plaintiffs and sold the property to Troco and Eldon Strong as tenants in common. Also contrary to the terms of the option agreement, AHN failed to satisfy the existing mortgages when the property was sold.

Plaintiffs filed this action asserting claims against the AHN defendants for (1) violation of the Colorado Organized Crime Control Act (COCCA), § 18–17–104, C.R.S.2003, based on the predicate act of civil theft; (2) breach of contract; (3) concealment, misrepresentation, or fraud; (4) unjust enrichment; (5) violation of the Uniform Consumer Credit Code (UCCC), § 5–1–101, et seq., C.R.S.2003; and (6) violation of the Colorado Consumer Protection Act (CCPA), § 6–1–101, et seq., C.R.S.2003. Plaintiffs also sought rescission of both the option agreement and the quitclaim deed to AHN, seeking to quiet title in their favor against all defendants.

The court granted summary judgment in favor of the AHN defendants on the UCCC claim. At the close of plaintiffs' evidence, the court determined that plaintiffs had abandoned their claim for rescission, dismissed that claim, and quieted title to the property in favor of Troco and Strong, alternatively reasoning that Troco and Strong were bona fide purchasers.

The jury returned separate verdicts against the AHN defendants as follows: (1) on the fraud claim, $512,260, including damages of $412,000 for fraudulent recording; (2) on the CCPA claim, $247,700; (3) on the COCCA claim, $247,700; (4) on the unjust enrichment claim, an advisory verdict of $367,200; and (5) for punitive damages, $1,500,000. The jury also returned a verdict against AHN and Senior Entrepreneurs Foundation for $247,700 on the breach of contract claim.

Finding that the damages awards other than the fraud award were duplicative because they were based on the "same operative facts" as the fraud, the trial court remitted the nonfraud damage awards. Additionally, the court concluded that an award of punitive damages was duplicative of the trebling required for the CCPA claim and remitted the punitive damages award.

## I. Quiet Title

Plaintiffs assert the trial court erred in quieting title in Troco and Strong on two grounds. Specifically, plaintiffs contend that their claim for rescission was improperly dismissed and, alternatively, that the property should have been returned pursuant to § 18-4-405, C.R.S.2003, the civil theft statute. We disagree.

### A. Rescission

The trial court found that plaintiffs had never tendered or offered to tender to AHN the $9,020 AHN paid to plaintiffs' lender on plaintiffs' behalf. Thus, the court determined that plaintiffs had abandoned their right to rescind the agreement. We agree that the dismissal of plaintiffs' rescission claim was proper on this basis.

■ A party asserting fraudulent inducement of a contract must elect whether to rescind or affirm the agreement. *Alien, Inc. v. Futterman,* 924 P.2d 1063 (Colo.App.1995); *Altergott v. Yeager,* 37 Colo.App. 23, 28, 543 P.2d 1293, 1297 (1975) ("By an unbroken line of cases our courts have held that one defrauded has either the right to affirm the contract and sue for damages, or rescind the contract and sue for return of the money paid . . . .").

■ This election can be manifested in three ways. First, the defrauded party may inform the other party that it is canceling the agreement. In doing so, the defrauded party must tender back, or offer to tender back, to the other party any benefit received pursuant to the agreement. *Tisdel v. Cent. Savings Bank & Trust Co.,* 90 Colo. 114, 130, 6 P.2d 912, 917 (1931) ("When one is induced through false and fraudulent representations to enter into an agreement, upon discovery thereof, he [may] rescind, in which event he must tender back that which he has received . . . ."); *Rubie Combination Gold Mining Co. v. Princess Alice Gold Mining Co.,* 31 Colo. 158, 161, 71 P. 1121, 1122 (1903) (In an action seeking cancellation of a deed, an "unbroken line of authorities" indicates that it "was incumbent upon plaintiff . . . to place defendant in the status quo . . . ."); *see Bennett v. Coors Brewing Co.,* 189 F.3d 1221 (10th Cir.1999) (applying Colorado law to preclude rescission claim based on fraud when no tender had been made). After rescinding the agreement and tendering back any benefit received, a defrauded party may bring suit for restoration to receive back any benefit conferred upon the other party. This remedy was historically known as rescission at law. *See Savers Fed. Savings & Loan Ass'n v. First Fed. Savings & Loan Ass'n,* 298 Ark. 472, 768 S.W.2d 536 (1989); D. Dobbs, *Law of Remedies* § 4.8, at 673–74 (2d ed.1993).

■ Second, the defrauded party may affirm the agreement. Typically, this affirmation is accomplished when the defrauded party takes action consistent with the continued vitality of the agreement. *See, e.g., Gladden v. Guyer,* 162 Colo. 451, 426 P.2d 953 (1967); *Wark v. Bopp,* 119 Colo. 12, 199 P.2d 892 (1948). In such an instance, a party cannot seek rescission and is limited to an action for damages arising out of the fraud. *Tisdel v. Cent. Savings Bank & Trust Co., supra,* 90 Colo. at 130, 6 P.2d at 917 (Upon discovery of the fraud, the party "may affirm the agreement, and maintain his action in damages for deceit."); *see also Shappirio v. Goldberg,* 192 U.S. 232, 242, 24 S.Ct. 259, 261, 48 L.Ed. 419 (1904) ("If [a defrauded party] continues to treat the property as his own the right of rescission is gone, and the party will be held bound by the contract.").

■ Third, a defrauded party who has neither informed the other party of its intention to rescind nor taken acts affirming the agreement may instead, if otherwise timely, file a claim for judicial rescission of the agreement. This action is in equity and proceeds under a theory of equitable rescission. *See Knaebel v. Heiner,* 663 P.2d 551 (Alaska 1983); Dobbs, *supra,* § 4.8, at 675–77.

■ A plaintiff seeking equitable rescission need not have tendered back anything received pursuant to the agreement prior to the commencement of a lawsuit. Nevertheless, in its pleadings, the defrauded party must, at a minimum, indicate that it is prepared to tender back any benefit received under the agreement. This indication is required because, for a trial court to "do equi-

ty" when canceling an agreement, the defrauded party must have the ability to return anything it had received pursuant to that agreement. *Cahill v. Readon,* 85 Colo. 9, 15, 273 P. 653, 656 (1928) ("It is claimed that there was no sufficient tender of rescission, but in Colorado the general tender of equity in the complaint is enough."); *Treat v. Schmidt,* 69 Colo. 190, 194, 193 P. 666, 668 (1920) (In an action for rescission of a deed, "tender in the complaint was sufficient."); *see also Gerbaz v. Hulsey,* 132 Colo. 359, 364, 288 P.2d 357, 359 (1955) (Failure to "plead an intention to restore plaintiffs to status quo" prevented rescission.).

■ Although the court here did not determine whether plaintiffs had affirmed the agreement through their actions, it found, with record support, that plaintiffs neither canceled the agreement prior to the lawsuit nor offered to repay the $9,020. Moreover, plaintiffs' pleadings, even liberally construed, do not contain any assertions that plaintiffs were willing or able to return the $9,020. Furthermore, the record indicates that plaintiffs made no offer during trial to return the money. Indeed, when ruling on the motion to quiet title at the close of plaintiffs' evidence, the trial court specifically noted that "the evidence is uncontroverted that there has never been an offer to restore the AHN defendants to the status quo."

### B. Statutory Return of Property

Plaintiffs also argue that because the jury found the AHN defendants liable under the COCCA, the trial court should have ordered the return of the property to plaintiffs pursuant to the rights in stolen property statute, § 18–4–405. We disagree.

Initially, we note that plaintiffs did not assert a claim for relief pursuant to § 18–4–405. Instead, the applicable claim was brought pursuant to the COCCA, and as part of this claim, plaintiffs asserted that the predicate act was the commission of civil theft. Therefore, plaintiffs' remedy for this claim derives from the COCCA, not § 18–4–405.

Unlike § 18–4–405, the COCCA provides the trial court with discretion to order appropriate remedies and to "mak[e] due provision for the rights of innocent persons." Section 18–17–106(1), C.R.S.2003; *see also* § 18–17–106(2), C.R.S.2003 ("All forfeitures or dispositions under this section shall be made with due provision for the rights of innocent persons.").

■ We conclude that the trial court determined an appropriate remedy here, given that Troco and Strong were innocent purchasers, plaintiffs' deed to AHN was not void, and equity favored quieting title in Troco and Strong.

### 1. Bona Fide Purchasers

Here, the trial court quieted title to the property in favor of Troco and Strong because, alternatively, it determined that they were bona fide purchasers. Based on this "innocent person" status, the court also denied relief to plaintiffs under § 18–17–106(1) of the COCCA. Plaintiffs' contentions to the contrary notwithstanding, this determination is supported by the record.

■ To be a bona fide purchaser of real property, one must pay value for the property, act in good faith, and lack notice of any defect in the title to the property. *Himes v. Schiro,* 711 P.2d 1281 (Colo.App.1985).

■ Whether a party is a bona fide purchaser is a question of fact. *Davis v. Pursel,* 55 Colo. 287, 297, 134 P. 107, 111 (1913); *Chandler Trailer Convoy, Inc. v. Rocky Mountain Mobile Home Towing Servs., Inc.,* 37 Colo.App. 520, 522–23, 552 P.2d 522, 524 (1976). We must accept a trial court's factual finding upon review unless it is so clearly erroneous as to have no evidentiary support in the record. *Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979).

First, there was evidence that Troco and Strong paid value for the property. The deed from AHN to Troco and Strong indicates that the property was purchased for $25,000, and Strong confirmed this amount in his testimony. Furthermore, Strong testified that the property was acquired subject to the two mortgages, and thus, the purchase price was comparable to the value of the property as reflected in the title commitment.

Second, Strong testified that he did not have a preexisting relationship with AHN, and there was no other evidence presented of any bad faith underlying the transaction. Hence, there is evidence in the record to support the finding that the purchase was made in good faith.

Third, there is also evidence in the record to support the trial court's determination that Troco and Strong had no notice of any title defect. There was no evidence of any communication from plaintiffs to Troco or Strong, either advising of the fraud or asserting rights to title. In addition, the record title as of the closing date reflected that AHN was the current owner of the property, and Strong testified that he had no actual knowledge of any infirmities with the deed.

The trial court also rejected plaintiffs' argument that, even in the absence of actual or constructive notice, Troco and Strong should be charged with notice of plaintiffs' rights because a reasonable inquiry would have revealed the fraud. *See Franklin Bank v. Bowling,* 74 P.3d 308, 313 (Colo.2003) ("Inquiry notice arises when a party becomes aware or should have become aware of certain facts which, if investigated, would reveal the claim of another. By operation of law, the party will be charged with all knowledge that a reasonable investigation would have revealed.").

■ Plaintiffs assert that, because Strong both had knowledge of plaintiffs' occupancy of the property and was witness to Jorene Martinez's distress when the house was shown to him, Troco and Strong should be charged with notice of the fraud.

■ However, the evidence at trial indicates that a reasonable investigation of plaintiffs' interest in the property would not have revealed the fraud perpetrated by AHN. Instead, a reasonable inquiry would have shown that AHN possessed legitimate title pursuant to the terms of an executed option agreement and that plaintiffs' possession of the property was in accordance with this agreement. Although plaintiffs assert that the mere use of a quitclaim deed put Troco and Strong on notice of defects in the title, a purchaser taking title by quitclaim deed has

the same protection of the recording statutes as one taking title by warranty deed. *See Kelsey v. Norris,* 53 Colo. 306, 308, 125 P. 111, 112 (1912).

Additionally, even if a reasonable inquiry required Troco and Strong to question plaintiffs as to the basis for Jorene Martinez's emotional state, the record—especially plaintiffs' own testimony—indicates that any such inquiry would have revealed only plaintiffs' dissatisfaction with AHN's efforts to relocate them, not the basis of a claim for fraud. As a result, even if Troco and Strong were charged with knowledge that would have been obtained from a reasonable inquiry, they still would have been without knowledge of the fraud.

## 2. Void Deed

Regardless of the trial court's finding that Troco and Strong were bona fide purchasers, plaintiffs contend the deed was a forgery and, therefore, was void. We disagree.

■ Generally, a bona fide purchaser will acquire title over a prior owner. *See* § 38–35–109, C.R.S.2003 (race-notice recording statute); *Delta County Land & Cattle Co. v. Talcott,* 17 Colo.App. 316, 321, 68 P. 985, 987 (1902)("[I]f, upon their face, the records are complete, and show that the title is good, in the absence of information to the contrary from any other source, [the purchaser] may safely rely upon them."); *see also Upson v. Goodland State Bank & Trust Co.,* 823 P.2d 704 (Colo.1992).

However, when the initial deed is void, as in the case of a forged deed, title cannot pass to the subsequent purchaser, and, as a result, the defrauded owner will prevail. *See Upson v. Goodland State Bank & Trust Co., supra.*

■ Here, the record indicates that plaintiffs signed the deed conveying the property to AHN. *See Bankers' Bldg. & Loan Ass'n v. Watson,* 94 Colo. 308, 313, 29 P.2d 711, 712 (1934) (Where a party admits signing the deed, "it was not falsely made and did not constitute a forgery."). Moreover, none of the procedural irregularities alleged by plaintiffs—conforming the typed names to the signatures on the title, correcting the legal description, and adding a notary

statement—rose to the level of material change rendering the deed void. *See Friend v. Stancato*, 140 Colo. 74, 342 P.2d 643 (1959) (if deed is consistent with original intent, lack of notary does not render deed invalid); *Travis Inv. Co. v. Nat'l Acceptance Co.*, 476 P.2d 1006 (Colo.App.1970) (not published pursuant to C.A.R. 35(f)) (technical corrections, such as to legal description, do not void deed); *see also Walker v. Independence Fed. Savings & Loan Ass'n*, 555 A.2d 1019 (D.C.1989) (where the legal effect intended by the parties remains unchanged, unilateral corrections to a deed do not void deed).

### 3. Equity

Plaintiffs contend that, despite Troco's and Strong's status as bona fide purchasers, the trial court abused its discretion because equity ultimately favors the return of the property to them. We again disagree.

By its nature, fraud that affects two innocent parties forces a court into a resolution in which one innocent party will suffer. The trial court was keenly aware of this dilemma. After quieting title in Troco and Strong, the court explained its decision:

> Now I'm sure the plaintiffs may be thinking, well, how is this fair to us, and this is where equity steps in. It really comes down to the fact that there was volitional conduct on the part of [plaintiffs] at the very beginning. I'm sure in hindsight they regret some things they did. They regret some associations they made. They regret some papers they signed. There is always regret, but it would not be fair to quiet title to them, when their volitional conduct in the beginning started this whole chain of proceedings.

 Indeed, the record reflects that plaintiffs were participants, albeit innocent ones, in the commission of the fraud. While plaintiffs were misled and misunderstood the import of this transaction, they still were involved in the fraud to a greater degree than Troco and Strong. As a result, the trial court did not abuse its discretion when it determined that the loss should be borne by plaintiffs here. *See Bray v. Trower*, 87 Colo. 240, 247, 286 P. 275, 278 (1930) (quoting *Moore v. Ellison*, 82 Colo. 478, 481, 261 P. 461, 462 (1927): "Where one of two innocent persons must suffer loss because of the fraudulent act of a third person, the law places the loss on the one who put it in the power of the third person to commit the fraud."); *Greenlees v. Chezik*, 68 Colo. 521, 190 P. 667 (1920).

### II. Damage Awards

On cross-appeal, the AHN defendants object to several aspects of the damage awards. We agree that one jury instruction was erroneous and conclude that the damages awarded on the CCPA claim are the proper amount of the entire award.

### A. Jury Confusion

The AHN defendants allege that manifest jury confusion requires a new trial. We disagree.

The AHN defendants base their argument on two grounds. First, they contend that the instructions and verdicts forms were structured in a manner to "inevitably lead to jury confusion." As part of this argument, the AHN defendants assert that the trial court should have instructed the jury that duplicative damages were improper. However, because the AHN defendants did not object in the trial court to these instructions and verdict forms, we consider these contentions to have been waived.

 Specifically, the record shows that the AHN defendants participated in the drafting of the instructions and verdict forms and neither raised objection to the form, order, or wording of the instructions nor sought the inclusion of an instruction on duplicative damages. In fact, we note that the AHN defendants' attorney remarked during a bench conference that one reason he had stipulated to a lengthier instruction was because "[j]ury confusion is not necessarily against my interests." Accordingly, on appeal the AHN defendants cannot complain about these verdict forms or instructions. *See* C.R.C.P. 51 (parties must submit all desired instructions, and objections not raised in trial court cannot be reviewed on appeal); *Itin v. Ungar*, 17 P.3d 129 (Colo. 2000); *see also Hansen v. State Farm Mut.*

*Auto. Ins. Co.,* 957 P.2d 1380 (Colo.1998) (discussing the doctrine of invited error).

The AHN defendants also argue that a handwritten notation by the jury on the wrong verdict form indicated that it was confused as to its role. Specifically, although the jury was instructed that it could award punitive damages on plaintiffs' fraud claim, it wrote its award for punitive damages on the verdict form for plaintiffs' CCPA claim.

■ However, the jury's award of punitive damages was supported by the evidence and in accordance with the instructions given by the court. In this context, that the jury recorded its award on a different verdict form than the form for the triggering claim does not indicate such confusion to warrant a new trial.

### B. False Recording

We agree with the AHN defendants, however, that the trial court's instruction on the calculation of damages pursuant to § 38–35–109(3), C.R.S.2003, was erroneous.

Section 38–35–109(3), provides:

Any person who offers to have recorded or filed in the office of the county clerk and recorder any document purporting to convey, encumber, create a lien against, or otherwise affect the title to real property, knowing or having a reason to know that such document is forged or groundless, contains a material misstatement or false claim, or is otherwise invalid, *shall be liable to the owner of such real property for the sum of not less than one thousand dollars or for actual damages caused thereby, whichever is greater,* together with reasonable attorney fees.

(Emphasis added.)

Over the AHN defendants' objection, the trial court instructed the jury that if liability were found on plaintiffs' false recording claim, the jury "shall award to the Plaintiffs the sum of not less than $1,000 per day from the day on which a demand for the release of the recorded documents was made on the Plaintiffs' behalf, or the actual damages caused thereby." Based on this instruction, the jury awarded to plaintiffs $1,000 a day for 412 days.

■ The AHN defendants argue that § 38–35–109(3) does not authorize a damage award of $1,000 per day, unless that is the amount of damages which occurred, and that accordingly, the jury instruction was incorrect. We agree. By its plain wording, § 38–35–109(3) provides that damages for false recording shall be the actual damages incurred, but no less than $1,000. It makes no mention of a daily damage penalty, and none may be implied. *See Anderson v. Watson,* 953 P.2d 1284 (Colo.1998) (In construing a statute, our primary task is to give effect to the General Assembly's purpose in enacting that statute by, if possible, giving the statutory terms their plain and ordinary meaning.).

*Harris v. Hanson,* 821 P.2d 821 (Colo.App. 1991), relied on by plaintiffs, does not hold otherwise. In that case, a division of this court upheld the imposition of a damage award under § 38–35–109(3) of $1,000 a day. However, the reference there to the daily penalty was merely a description of the actual damages awarded by the jury, not an interpretation of the statute.

### C. Remittitur of Damages

The AHN defendants next raise several interrelated issues regarding the court's remittitur of damages. We reject these arguments.

### 1. Duplicative Damage Awards

The trial court remitted the nonfraud damage awards because they were based on the "same operative facts" as the fraud and, thus, were duplicative. We disagree with the AHN defendants that such a remittitur was improper.

■ To the contrary, a plaintiff cannot recover twice for the same injury. *See Lexton–Ancira Real Estate Fund v. Heller,* 826 P.2d 819 (Colo.1992). Because the trial court properly concluded that the nonfraud awards were based on the same facts, the trial court's remittitur of the COCCA, CCPA, breach of contract, and unjust enrichment awards was not error, but rather was legally required.

### 2. Excessive Damage Award

The AHN defendants contend that the jury's award of damages was excessive. As part of this argument, the AHN defendants assert that a handwritten notation by the jury on the breach of contract verdict form—requesting that plaintiffs' attorney fees be paid by defendants and that title to the property be returned to plaintiffs—indicated a bias against the AHN defendants. We do not agree.

A jury's determination of damages should not be set aside unless it is grossly excessive and clearly motivated by something other than the evidence in the case. *Moseley v. Lamirato,* 149 Colo. 440, 370 P.2d 450 (1962). Accordingly, we should overturn a jury's award of damages only upon a showing that the jury acted arbitrarily and capriciously or was swayed by passion or prejudice. *Steele v. Law,* 78 P.3d 1124 (Colo.App.2003).

Initially, we note that the trial court properly remitted the punitive damages award because of the award of treble damages pursuant to § 6–1–113, C.R.S.2003. *See Lexton–Ancira Real Estate Fund v. Heller, supra* (punitive damages and trebled damages are duplicative). As a result, we need not address defendants' argument that the punitive damages were excessive.

As to the compensatory damages award, the jury was given a framework within which to make its determination. Specifically, by agreement of the parties, the jury was instructed as to particular factors that could be considered in assessing compensatory damages. Some of these factors suggested increase in the amount of plaintiffs' damages, including (1) plaintiffs' equity in the property prior to their dealings with AHN; (2) plaintiffs' mortgage payments since the house was sold to Troco and Strong; (3) the current equity in the property; (4) the value of any benefits conferred by plaintiffs upon AHN; and (5) membership fees paid by plaintiffs to AHN, which was only included for the fraud, nondisclosure, and concealment claim. Other factors suggested reduction in the amount of plaintiffs' damages, including (1) plaintiffs' outstanding balance on the mortgages on the property; (2) the equity in any comparable property AHN assisted or would have assisted plaintiffs in purchasing; (3) the extent of plaintiffs' default at the time of the agreement; and (4) the fact that plaintiffs were facing a pending foreclosure at the time of the agreement.

In light of these factors and the evidence at trial, we agree with the trial court that, regardless of the jury's handwritten notations concerning attorney fees and return of the property to plaintiffs, the compensatory damage award was neither excessive nor a result of improper passion or prejudice. *See Hotchkiss v. Preble,* 33 Colo.App. 431, 521 P.2d 1278 (1974).

### D. Redetermination of Damages

Because we have concluded that the fraud award ($512,260) must be reduced by the amount awarded for fraudulent recording ($412,000), but the trial court ordered remittitur of the other awards on the basis of the entire fraud amount, we must determine whether further proceedings are necessary to ascertain the damages to which plaintiffs are entitled. We conclude that a remand is not required and that the CCPA award should be controlling.

The trial court based its remittitur on its finding that the multiple awards all were based on the same facts underlying the fraud award. In doing so, the trial court upheld the highest amount of damages awarded by the jury. Applying that reasoning to the damage awards that remain after setting aside the award for fraudulent recording, and considering the advisory nature of the unjust enrichment award, we conclude the highest awards remaining are for violation of the CCPA and the breach of contract. Because the breach of contract award only applies to particular defendants, upholding the CCPA award ($247,000), trebling this amount pursuant to § 6–1–113, and remitting the other awards is most consistent with the trial court's ruling and the jury's intent.

Furthermore, we conclude that no remand is needed on the fraudulent recording award. Because there is no daily penalty required by statute, damages would either be $1,000 or actual damages, whichever were greater.

Because this award was based on the same fraudulent scheme underlying the CCPA award, any damages would be duplicative. Moreover, in light of the evidence of damages in the record, there is no possibility that this award could be greater than the $741,000 awarded on the CCPA claim.

Thus, on remand, the trial court must enter judgment for plaintiffs in the amount of $741,000.

### III. Contempt

In its separate appeal, plaintiffs' counsel alleges that the contempt sanctions against it must be vacated. We agree.

Trial was delayed for four hours while plaintiffs' counsel prepared final jury instructions. After questioning counsel in open court, the trial court stated that the delay warranted sanctions against counsel. Two days later, the trial court imposed a fine of $4,700 for delaying the proceeding.

This ruling indicates that the trial court based its sanctions on counsel's alleged dilatory conduct. However, contempt based on acts that occur "out of the direct sight or hearing of the court" is indirect contempt. C.R.C.P. 107(a)(3). Because none of the offending behavior was observed or heard by the trial court, it should have been evaluated as indirect contempt. *See Dist. Attorney v. Dist. Court*, 150 Colo. 136, 371 P.2d 271 (1962) (Because failure to appear in court is based on acts occurring outside the courtroom, it is evaluated as indirect contempt.).

Pursuant to C.R.C.P. 107(c), for hearing on indirect contempt the court must, among other things, issue a citation ordering appearance "at least twenty days before the time designated for the person to appear." Furthermore, if, as here, punitive sanctions are sought and if the judge initiates the contempt proceedings, the party "shall be advised of the right to have the action heard by another judge." C.R.C.P. 107(d)(1).

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2003.

* Justice COATS would grant as to the following:

 Here, none of the C.R.C.P. 107 procedures for a hearing and the imposition of sanctions were followed by the trial court. Accordingly, the order of sanctions must be set aside.

The judgment is reversed as to the amount of damages, and the case is remanded for further proceedings in accordance with this opinion to enter a corrected judgment reflecting the damage award on the CCPA claim in the amount of $741,000. In all other respects, the judgment is affirmed. The order of contempt is vacated.

Judge PIERCE ** and Judge NEY ** concur.