## No. 12,309.

### Bray *v.* Trower.

(286 Pac. 275)

Decided March 24, 1930.

Mr. John F. Mail, for plaintiff in error.

Mr. E. F. Chambers, Mr. J. C. Lang, Mr. John H. Voorhees, for defendants in error.

*In Department.*

Mr. Justice Adams delivered the opinion of the court.

Trower, plaintiff in the district court, got a permanent injunction against Bray and the public trustee in Kiowa county, restraining them from foreclosing a trust deed held by Bray on the north half of section 14, township 19 south, range 44 west, in Kiowa county. Bray brings the case here on writ of error to review the judgment. We shall refer to Trower as plaintiff and to Bray as defendant, as aligned at the trial.

On April 30, 1919, Trower was the owner of the north half of section 14, township 19 south, range 44 west, and Doll, Lamb and Woolery were copartners in the real es-

tate business in Kiowa county. On that date, Trower agreed in writing with that firm to sell the above land to them or to any person named by them in their place and stead, for the sum of $8,000, payable $500 on date of sale, $2,700 on date of settlement and $4,800 balance of purchase price in three years, secured by a mortgage on the land. This agreement was signed by Trower, and by Doll for his firm. It was not acknowledged and was never recorded.

October 16, 1919, Trower executed a warranty deed to the half section described, to James H. Parks of Nebraska, a customer of Doll, Lamb and Woolery, for a stated consideration of $11,200, "in hand paid," according to the deed. This deed was recorded June 5, 1920.

Under date of October 16, 1919, Parks and his wife executed a note in the principal sum of $1,600 in favor of Doll, Lamb and Woolery, secured by a deed of trust on the land described. It runs to the public trustee in Kiowa county, was acknowledged November 17, 1919, and recorded December 13, 1919. Bray claims under this trust deed by mesne assignments. Simultaneously with the execution of the above paper, Parks and his wife executed another note in the principal sum of $4,800 in favor of Trower, secured by a separate deed of trust on the same land, to the same public trustee, and recorded January 20, 1920. Trower claims under this trust deed as the original beneficiary. The two trust deeds bear the same dates, but it will be noted that the $1,600 trust deed held by Bray was recorded first. Both of these trust deeds were executed as a part of the same transaction, and were given for the unpaid balance of purchase money on the sale of the land.

Trower shows that his dealings were at all times with Doll, who represented the firm of Doll, Lamb and Woolery; that Trower was getting ready to go to California, and that after he signed the contract dated April 30, he left the deed to the land with Doll, entrusted all matters with Doll to take care of, and in the year 1919, Trower

went to California to live. Trower thinks the name of the grantee was left in blank and afterwards filled in; he says he knew that Parks was the purchaser before he went away, but that he never heard of the $1,600 trust deed until May, *1926;* that he relied on Doll to see that everything was right, and so informed Doll; that Doll told him that he would get $8,000 for his land, and that he left money with Doll for recording the $4,800 trust deed. Trower claims that Doll defrauded him by having the $1,600 trust deed recorded before the other.

Parks and his wife failed to pay either note, and on May 25, 1925, Trower procured a foreclosure by the public trustee of a part of the land, the northeast quarter of section 14, township 19 south, range 44 west, and bid it in for $3,200. On that date, the public trustee issued a certificate of purchase to Trower in duplicate, pursuant to section 5052, C. L. 1921. The certificate shows on its face that it is "subject to deed of trust of $1,600." It is admitted that when this foreclosure by the public trustee took place, no notice was given to the holder of the $1,600 encumbrance. Over a year later—June 21, 1926—the public trustee issued a deed to the above quarter section to Trower, but failed to note on such deed that it was subject to the $1,600 deed of trust. The public trustee's deed was recorded on June 21, 1926. Apparently, the reason for his failure to include the northwest quarter of section 14 in the foreclosure was that it was cut out by a prior encumbrance which is not here involved.

The $1,600 note and trust deed went through various hands. In May, 1926, it was owned by one King. On June 1, 1926, King sold this paper to the defendant Bray, for which the latter paid the sum of $1,600 in cash. On June 19, 1926, Bray filed a notice of election and demand for sale by the public trustee. On July 31, 1926, this suit was commenced in the district court. August 7, 1926, an order for a temporary injunction issued, and on August 20, 1926, Bray filed with the public trustee a

written withdrawal of his notice of election and demand for sale.

Trower alleges that when Bray acquired the $1,600 trust deed, the latter was informed, and knew, that it was intended to be a second encumbrance on the property, but Bray denies it. Trower prayed for an injunction against Bray's foreclosure, which was granted. He prayed also that the $1,600 trust deed be set aside, held for naught, and that it be declared not to constitute any lien or encumbrance on the land. The decree does not in express terms cover this prayer, but it is granted in effect through the perpetual injunction, which makes the $1,600 trust deed worthless as a lien of any kind if the injunction be allowed to stand.

1. The legal question involved is, Which of the two trust deeds is entitled to a first lien on the land, Trower's for $4,800 or Bray's for $1,600? The answer depends on whether Bray had notice or knowledge of facts putting him on inquiry that Trower was defrauded by Doll in failing to have the $4,800 trust deed recorded first.

Trower's counsel invokes the negotiable instrument act and says that because Bray bought the $1,600 note after maturity, it is therefore subject to defenses between the original parties. But Trower was not a party to the $1,600 note, he is not asked to pay it, its validity is not in dispute, there are no defenses to that note between the original parties or otherwise, and consequently the test is inappropriate. Trower's counsel further argue that the debt is the main thing, that the security is only incidental, and follows the $1,600 note. As an abstract legal proposition, this may be conceded to be correct, but if they insist on this formula as a criterion, they argue themselves out of court, because in this instance the $1,600 trust deed follows a good note, either in the hands of the original holder or present owner, and such note is past due and unpaid. However, we must avoid these blind alleys to which we are invited, and pursue the goal by way of the main road.

2. We speak advisedly when we say that regardless of whether the $1,600 lien is first or second, the $1,600 note and trust deed are both legitimate, and were given to secure a part of the purchase price of the land. We should say this much, even if we stopped after reading the complaint, but of course it does not dispose of the question as to which of the two trust deeds comes first. Plaintiff pleaded the assignment of the Doll, Lamb and Woolery paper to defendant Bray, which made it unnecessary for the latter to show it. The real purchase price was not the sum of $8,000, as contemplated by the unrecorded contract of April 30, 1919, between Trower and Doll et al; it was $11,200 as evidenced by Trower's later deed to Parks, recorded June 5, 1920, substantiated by this and other proof, and the $1,600 note and trust deed were a part of the purchase price. Doll, Lamb and Woolery made their living by selling real estate; as far as appears of record, they received no compensation for their services other than through the increased price, and it is unbelievable that either they or Trower expected them to go unremunerated, nor is it even suggested, although the injunction completely wipes out the $1,600 trust deed. We have no doubt that the very purpose to be accomplished, when Trower entrusted to Doll the former's warranty deed with the name and consideration omitted, was to have that information filled in as soon as they knew what it was to be, and this is what was done. It did not justify Doll in having his trust deed recorded first, but this is not a suit between Trower and Doll. It is a fact that a part of the purchase price went to Doll and his partners, but they were Trower's chosen representatives according to his own story, and it is immaterial whether he or they got it, in so far as it affects a third party, unaware of the private arrangements between Trower and his faithless agents. If Doll defrauded Trower, the latter should look to Doll for redress, and not to an innocent party. *Abley v. Davies,* 84 Colo. 398, 402, 270 Pac. 880.

246

■ 3. When Bray bought his paper on June 1, 1926, he relied on the public records of Kiowa county. It is not without significance that the holder of the $1,600 trust deed was not given notice of Trower's foreclosure. Such holder was not treated as a "subseuent encumbrancer" entitled to notice under section 5050, C. L. 1921. He was treated as a lienor senior to the party foreclosing. Bray examined an abstract of title, which showed that the $1,600 trust deed constituted a first lien, and that it was expressly excepted in Trower's certificate of purchase. Bray was emphatic in his testimony that he had no notice or knowledge of facts putting him on inquiry that would disclose a contrary situation. What others knew, or might have known, is beside the point. When simmered down, the only tangible evidence, if any, which tended to show notice or knowledge of facts brought home to Bray, or that should have caused him to inquire further, relates to some question not relevant here, about the title to the northwest quarter of the section. This apparently has caused confusion, but plaintiff has shown that he had no interest in this quarter when he sued, because it was cut out by foreclosure of another lien superior to the liens of both parties. And even if Bray had had a suspicion that Trower at one time laid claim to the northeast quarter, it would naturally have been allayed by the last instrument then of record, the public trustee's certificate of purchase of May 25, 1925, more than a year before, which showed on its face that Trower bid in that property for $3,200, "subject to deed of trust of $1,600." We think it was so intended, but if Trower did not mean it, he was derelict in accepting and acquiescing in such an instrument for so long a time, during which period Bray's rights intervened. These words, "subject to deed of trust of $1,600," would indicate to a stranger that if Trower ever claimed a prior right, he had abandoned it. Thereafter, he adopted a startling expedient. He procured a public trustee's deed

after the period of redemption had expired, different from the certificate of purchase on which the deed was based, in that such deed failed to mention that it was subject to the $1,600 deed of trust, although mentioned in the certificate. This device did not dispose of the $1,600 encumbrance, however, for Trower did not take title to any more than his certificate of purchase shows that he actually bought at the foreclosure sale, the public trustee's deed to the contrary notwithstanding.

 4. Trower is manifestly mistaken in his statement that he did not know of the $1,600 trust deed until May, 1926, in the face of the fact that he then possessed the year old certificate of purchase, which showed such encumbrance. And as to Bray, without actual notice or knowledge of facts putting him on inquiry, he had a right to rely on the public records of Kiowa county. *Delta County Land and Cattle Co. v. Talcott,* 17 Colo. App. 316, 68 Pac. 985; *Stetler v. Winegar,* 75 Colo. 500, 503, 226 Pac. 858. Under these facts, the Bray trust deed is first in right, because recorded first. Section 4902, C. L. 1921; *Houlahan v. Finance Cons. Mining Co.,* 34 Colo. 365, 82 Pac. 484; *Kelsey v. Norris,* 53 Colo. 306, 125 Pac. 111.

██ 5. We are not to be understood as sanctioning such a loose manner of conveyancing as turning over a signed and acknowledged deed to another, with essential parts omitted, but whatever Doll did or failed to do, Trower made possible when the latter went to California and left Doll to complete the transaction. We must apply the rule that, ''Where one of two innocent persons must suffer loss because of the fraudulent act of a third person, the law places the loss upon the one who put it in the power of the third person to commit the fraud.'' *Federal Acceptance Corp. v. Dillon,* 82 Colo. 598, 600, 262 Pac. 85; *Moore v. Ellison,* 82 Colo. 478 ,481, 261 Pac. 461; *Brown v. Driverless Car Co.,* 86 Colo. 216, 288 Pac. 488; *Greenlees v. Chezik,* 68 Colo. 521, 523, 190 Pac. 667.

██ 6. The case of *Emery v. Ward,* 68 Colo. 373, 191

Pac. 99, is relied on by counsel for Trower, as establishing the fact that the Trower $4,800 trust deed is a purchase money mortgage, and as such is entitled to priority over liens of lesser rank. Trower's trust deed *is* a purchase money mortgage, but as we have seen, the Bray $1,600 trust deed is also a purchase money mortgage created in the same transaction. Since the two trust deeds are of equal dignity and importance in this one respect, *Emery v. Ward, supra,* is not in point, and the recording statute governs.

7. The complaint and injunction cover the north half of section 14, but since plaintiff had no title or interest in the northwest quarter thereof when he brought his suit, defendant's title or interest therein is not plaintiff's concern. *MacKay v. Silliman,* 84 Colo. 220, 269 Pac. 901; *Goodrich v. Union Oil Co.,* 85 Colo. 218, 228, 274 Pac. 935. As to the remaining part of the land, the northeast quarter, the injunction does not lie because Trower's lien is secondary to Bray's.

8. Counsel for Trower assert that this case is now moot because, after Bray had been enjoined, he withdrew his notice of election and demand upon the public trustee for the sale of the property. We do not agree with them. The following is a general definition of a moot case, sufficient for all purposes here: "Any attempt, by a mere colorable dispute, to obtain the opinion of a court upon a question of law, when there is no real controversy * * *." Bouvier's Law Dictionary (Rawles 3d Rev.), page 2245. There has been no such attempt on the part of defendant Bray. Plaintiff cannot tie up defendant with a permanent writ of injunction, and then declare the case to be moot because the party enjoined does not defy the order of the court. Defendant could not do otherwise than obey the order, and he is entitled to a review in this court, to determine whether or not the injunction was improvidently issued.

For the reasons stated, the judgment is reversed, with

directions to dissolve the injunction and dismiss the complaint.

MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE CAMPBELL and MR. JUSTICE ALTER concur.