## No. 18,636.

BANK OF DENVER *v.* GEORGE LEGLER.

(350 P. [2d] 1059)

Decided April 4, 1960.  Rehearing denied April 25, 1960.

Mr. S. F. DAVIS, Mr. HAROLD POTASHNIK, for plaintiff in error.

Mr. ALBERT V. WITHAM, Mr. JACK R. VIDERS, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE KNAUSS.

THIS action involves the right to possession of certain service station equipment as between contending chattel mortgagees. The facts, briefly stated, appear as follows: Prior to March 13, 1956, defendant in error George Legler was the owner of a service station located at 2200 West 29th Avenue in Denver, known as Legler Chevron Service Station. Several days prior to that date he had entered into negotiations with J. H. Morrow, Marvin G. Kelly and A. C. Ihle for the sale of the station for a total purchase price of $5,500.

Morrow and his associates applied to the plaintiff in error Bank of Denver for a loan to enable them to acquire the service station, and after an inspection and appraisal by a representative of the bank, Morrow was advised that a loan of $4,000 would be made upon the security of the property and equipment involved, together with other property which Morrow and his associates then owned. On March 13, 1956, Morrow, Kelly and Ihle executed and delivered to the Bank of Denver their note and chattel mortgage to secure the sum of $4,647, covering the property they proposed to purchase from Legler, as well as the other property mentioned. This chattel mortgage was filed for record on March 21, 1956. On March 16, 1956, Legler sold and transferred the service station and equipment to Morrow, Kelly and Ihle, by bill of sale, receiving in return therefor a cashier's check of the Bank of Denver for $4,000 and a note for $1,500, representing the balance of the purchase price, payable within three years at the rate of $500 per annum, and secured by a chattel mortgage on the property transferred. Legler did not file his

chattel mortgage for record until more than a year after its execution. Default having occurred as to both chattel mortgages, Legler and the Bank instituted separate actions for possession of the mortgaged property. The action in which the Bank was plaintiff and Legler and others defendants, was tried to a jury resulting in a directed verdict and judgment in favor of Legler. A like judgment followed in the consolidated case brought by Legler. The Bank is here by writ of error seeking reversal.

It is clear that at the time Morrow, Kelly and Ihle executed and delivered their chattel mortgage to the Bank they had no title to the property of Legler which they purported to mortgage. Legler was under no obligation to sell, no contract had been made, and no earnest money paid. The Bank had made no contact with Legler, and so far as the record reveals Legler had no knowledge of the dealings between the purchasers and the Bank, nor of the circumstances under which the Bank proposed to make the loan to Morrow and his associates. There is nothing in the record to suggest that Legler waived any of his rights, or that he consented to subordinate his interest in the property to that of the Bank. There was in fact no contact at all between the Bank and Legler, other than that a representative of the Bank, who did not identify himself as such, called at Legler's establishment, asked to be allowed to look over the equipment, and was told to "help himself."

It is the contention of counsel for the Bank that the mortgage executed by Morrow, Kelly and Ihle, filed for record almost a year prior to the filing of the Legler mortgage, established a superior right over any title or interest of Legler; that while perhaps of questionable validity at the time it was executed, because of lack of title in the mortgagors, upon their acquiring title several days thereafter it became valid. As supporting this proposition they cite the case of *Personal Finance Co. v. Henley-Kimball Co.*, 61 R.I. 402, 1 Atl. (2d) 121. An

examination of that case discloses a very different fact situation from that before us. There the action was not between the mortgagee and the original seller of the property who had retained title under a purchase money lien, but against a purchaser twice removed from the mortgagor who acquired the property long after the purchase money lien had been discharged. It was there held that as between the mortgagee and a subsequent purchaser from the mortgagor, the mortgage was valid, notwithstanding the mortgagor had not acquired title at the time the mortgage was executed.

█ Here the contest is between the owner of property who never parted with title thereto, and one who accepted a chattel mortgage from parties who at the time of its execution did not own the property and did not thereafter acquire title free from a purchase money mortgage. In *Robinson v. Wright,* 90 Colo. 417, 9 Pac. (2d) 616, the court said:

"We have held that a mortgage of land executed by a purchaser thereof contemporaneously with the acquisition of the title or afterwards as part of the same transaction, is entitled to preference over all other claims or liens through the mortgagor, even though prior in time. The reason for the rule is that, the execution of the deed and mortgage being practically simultaneous acts, the title does not for a single moment rest in the purchaser unincumbered by the mortgage."

" * * * the rule that we are considering applies equally to real estate mortgages and chattel mortgages, * * *."

█ As to the validity of a chattel mortgage executed by one not the owner of the property mortgaged, it was said in *Central Finance Corporation v. Calvert,* 130 Colo. 519, 276 P. (2d) 990:

"In the instant case, defendant was wholly unjustified in seizing and converting the chattels to his own use unless the chattel mortgage in question was valid. To be valid the mortgage must have been executed by

the owner of the property in substantial conformity with the statute."

Here the Bank accepted a mortgage from parties who were not the owners of the property mortgaged and whose only interest rested in a hope or expectation. That the Bank might have protected itself from the consequences of its imprudence by consulting with Legler to determine whether he would be willing to complete the transaction without security for the balance of his purchase price, appears from the testimony of a vice-president of the Bank, who when asked why the Bank would take a mortgage from parties who did not own the property mortgaged, replied:

"That is the regular course of business. There is no other way to do it. We take a mortgage today, and when the transfer is made we pay the money over."

"Q. * * * In other words you held the money until you knew the transfer had been made? A. That's right. Q. But you still took the mortgage on the 13th? A. That's right. Q. From three who had no interest in the property? A. They would have an interest when the conditions were met."

It is clear that the Legler mortgage was given as part of the purchase price of the property sold, and as such is to be preferred over any other lien or mortgage which the purchasers may have given for any purpose, either before or after acquiring title and possession of the property, except as to third parties entitled to rely upon the public record. Under the circumstances disclosed by this record, the prior recording of the bank mortgage is of no significance since it would not serve as notice to Legler of a prior lien, because, as said in the Robinson case, the mortgagors never acquired title-free from the lien of the purchase money mortgage.

The judgment is affirmed.

Mr. Chief Justice Sutton and Mr. Justice Day concur.