ALH HOLDING COMPANY, an Arizona
corporation, Petitioner,

v.

The BANK OF TELLURIDE, a Colorado
banking association, Respondent.

No. 99SC375.

Supreme Court of Colorado,
En Banc.

Dec. 4, 2000.

Bendelow & Darling, P.C., Jeffrey R. Bergstrom, Edward M. Bendelow and Lee J.

Darling, Denver, CO, Attorneys for Petitioner.

Gaddis, Kin & Herd, P.C., James W. Kin and Walter H. Sargent, P.C., Colorado Springs, CO, Attorneys for Respondent.

Justice COATS delivered the Opinion of the Court.

ALH Holding Company petitioned for a writ of certiorari to review the court of appeals decision in *ALH Holding Co. v. Bank of Telluride,* 988 P.2d 181, 183 (Colo.App. 1999). The court of appeals reversed the district court's judgment in favor of ALH in an action brought by ALH against the Bank of Telluride and held that the Bank's deed of trust was entitled to priority over the deed of trust of ALH concerning the same property. Because Colorado's recording statute does not resolve the question of priority under the circumstances of this case, and because the law of the state apart from the recording statute recognizes the priority of ALH's deed of trust executed contemporaneously with its sale of the property, the judgment of the court of appeals is reversed.

I.

The essential facts were undisputed by the parties. The Petitioner, ALH Holding Company, sold real property to Linda Crocker and Robert Hackley (the "buyers") for $165,000. In connection with the sale, the buyers borrowed $110,000 from ALH in exchange for a promissory note secured with a vendor's purchase money deed of trust in favor of ALH. The buyers also borrowed $55,000 from the Respondent, the Bank of Telluride, and similarly signed a promissory note secured with a purchase money deed of trust in favor of the Bank. Both ALH and the Bank knew, before the closing, that the other would be loaning money to the purchaser and that both loans would be secured by deeds of trust conveying interests in the same property. Telluride Mountain Title Company closed the transaction for both parties on June 29, 1993, and on the following day recorded the deeds of trust. The deed of trust in favor of the Bank was recorded before that of ALH.

After the buyers defaulted on both notes, the Bank initiated a public trustee's foreclosure sale of its interest in the property, characterizing its own deed of trust as a superior lien to that of ALH. ALH brought an action against the Bank, seeking a preliminary injunction and a declaratory judgment resolving the respective priorities of the two deeds of trust. The parties stipulated to certain facts and moved for a determination of the question of priority as between the two deeds of trust pursuant to C.R.C.P. 56(h). The district court concluded that as a matter of Colorado law, a vendor's purchase money deed of trust takes priority over a third-party's purchase money deed of trust, and it entered judgment in favor of ALH.

With one member dissenting, a panel of the court of appeals reversed, holding that because the Bank's deed of trust was recorded first, it was entitled to priority, absent an agreement to the contrary. The disagreement between the majority and the dissent centered primarily on the effect of this court's holding in *Bray v. Trower*, 87 Colo. 240, 286 P. 275 (1930), and the relative priorities of purchase money mortgages on the same property. Unlike the majority, the dissent did not believe the holding of *Bray* dictated the priority of the first recorded purchase money deed of trust and instead concluded that the case law of this jurisdiction is in accord with the reasoning of the Restatement (Third) of Property § 7.2 (1997), affording priority among purchase money mortgages on real property to those given to vendors.

This court granted ALH's petition for a writ of certiorari to consider whether the court of appeals properly applied the state's recording statute and if not to indicate the principles upon which the priority of interests should be determined.[1]

## II.

Recording statutes in this country have long operated to alter the priority of various property rights on the basis of notice, recording, or some combination of the two. Colorado has had a recording statute since 1861. *See* § 9, Colo. G.L., p. 65 (1861). The statute has undergone numerous revisions from its original form and is currently codified at section 38–35–109(1) of the Colorado Revised Statutes. At the time applicable to the events in this case, the recording statute included the following language:

> All deeds, powers of attorney, agreements, or other instruments in writing conveying, encumbering, or affecting the title to real property, certificates, and certified copies of orders, judgments, and decrees of courts of record may be recorded in the office of the county clerk and recorder of the county where such real property is situated. No such unrecorded instrument or document shall be valid as against any class of persons with any kind of rights who first records, except between the parties thereto and such as have notice thereof. This is a race-notice recording statute.

§ 38–35–109(1), 16A C.R.S. (Supp.1989).[2]

The statute protects a later grantee with rights in real property against a prior executed but unrecorded instrument to which it is not a party, if the later grantee lacks notice of the prior unrecorded instrument and records first. According to the plain language of the statute, even though the later grantee's instrument was recorded first, it still cannot benefit from the recording statute if it had notice of the earlier unrecorded instrument. Until 1996 the statute did not make clear that the class of later grantees excluded from the benefits of the statute because of

1. The issues presented for certiorari review were:
 (1) Whether the Court of Appeals erred in ruling that *Bray v. Trower*, 87 Colo. 240, 286 P. 275 (1930), was controlling in this case and that the priority between a vendor's deed of trust and a third-party lender's deed of trust was governed by the order in which the documents were recorded.
 (2) Whether the Court of Appeals erred by not following the Restatement (Third) of Property: Mortgages § 7.2(c) (1997).

 (3) Whether the Court of Appeals' opinion properly applied Colorado's Recording Act.

2. The recording statute was substantially amended in 1984, characterizing itself for the first time as a "race-notice" recording statute. Ch. 267, sec. 1, § 38–35–109(1), 1984 Colo. Sess. Laws 979, 979.

notice was limited to those with notice of the unrecorded instrument before acquisition of the later grantee's rights.[3] However, later grantees with notice even before they acquired rights were clearly included in the less precise language of the earlier statutes. Therefore, although the Bank's deed of trust was recorded first, the recording statute would confer no priority upon it if it were aware of ALH's unrecorded deed of trust before acquiring its own rights in the property.

■ Where a security agreement, or mortgage, is executed between a purchaser and a vendor as part of the same transaction in which the purchaser acquires title to the property, the execution of the deed and the mortgage are considered simultaneous acts. *Chambers v. Nation*, 178 Colo. 124, 129, 497 P.2d 5, 7 (1972); *Bank of Denver v. Legler*, 142 Colo. 333, 336, 350 P.2d 1059, 1061 (1960). As a matter of law, such a purchaser never has an unencumbered title to property in which he can assign further rights. *See Chambers*, 178 Colo. at 129, 497 P.2d at 7; *Legler*, 142 Colo. at 336, 350 P.2d at 1061. Therefore, even a third party who loans money to the purchaser that is applied to the purchase, and who takes back a mortgage on the purchased property, cannot acquire rights to the property from the purchaser unencumbered by the vendor's mortgage, regardless of the order in which the documents are signed. *Legler*, 142 Colo. at 336, 350 P.2d at 1061.

■ By acquiring its rights to the property in the same transaction, with full knowledge that the loan of the vendor, ALH, would be secured by a deed of trust, the Bank necessarily had notice of ALH's unrecorded instrument within the meaning of the recording statute. Whether or not the Bank's deed of trust was actually signed before that of ALH at the closing, the Bank's deed of trust could not have the legal effect of acquiring rights to the property before the execution of ALH's instruments, of which the Bank was aware. The statute, therefore, could not re-

solve the question of priorities in favor of the Bank.

The court of appeals understood *Bray v. Trower* to hold that priority among purchase money mortgages on the same land is necessarily governed by the order in which the respective instruments were recorded, absent an agreement to the contrary. *Bray* merely recognized, however, that purchase money mortgages were instruments to which the recording statute applied. It nowhere suggested that the applicable recording statute—in that case the pre 1927 recording statute, which differed substantially from the version at issue here, *see* Colo. Comp. Laws ch. 102, § 4902 (1921)—would always resolve the question of priority among purchase money mortgages, much less always resolve it in favor of the first recorded mortgage. It clearly did not discount the effect of notice or lack of notice on the statutory determination of priority. *See Bray*, 87 Colo. at 247, 286 P. at 278 (emphasizing *Bray's* lack of actual knowledge or notice of facts putting him on inquiry and his right to rely on the public records). Given the vastly different factual situation in *Bray*, it was never necessary to consider the validity of the simultaneous act rationale or its effect on notice to a third party taking a purchase money mortgage at the same closing.

■ On its face, the recording statute provides a method by which a later grantee of rights in real property can, under certain circumstances, perfect its title against an earlier grantee. However, a failure of the later grantee to qualify for the benefits of the statute does not necessarily mean that its interests are subordinate to those of an earlier grantee. If the later grantee has notice of the earlier unrecorded instrument or fails to record first, the recording statute simply fails to provide a mechanism for determining the priority of the competing interests, and none will be imputed to it. *See Peters v. Smuggler–Durant Mining Corp.*, 930 P.2d 575, 580 (Colo.1997) ("Statutes that are in derogation of property rights, as with other

---

**3.** In 1996 the statute was amended by the addition of the words, "prior to acquisition of such rights," after the words, "notice thereof," in its exception from protection for those having notice

of the prior unrecorded instrument. Ch. 275, sec. 1, § 38–35–109(1), 1996 Colo.Sess.Laws 1554, 1554.

rights under the common law, must be strictly construed."). Where no statute controls, the priority of rights in real property must be determined by reference to the common law. *See* 14 Richard R. Powell, *Powell on Real Property* § 82.02[3][b] (1996) ("[I]f the subsequent purchaser cannot claim the benefit of the recording act, which is in derogation of the common law, the issue must be resolved by a reference to common law principles."). Because the Bank necessarily acquired its rights to the property following ALH's deed of trust, and it had notice of ALH's unrecorded instrument prior to acquiring rights of its own, the recording statute does not resolve the priority question.

### III.

When the priority of rights in real property is not dictated by the operation of the recording statute, the rule in Colorado has long been that security interests, or mortgages, given in exchange for money applied to the purchase of the property have priority over all other liens. *See, e.g., Chambers,* 178 Colo. at 128–29, 497 P.2d at 7; *Robinson v. Wright,* 90 Colo. 417, 421, 9 P.2d 618, 619 (1932); *Emery v. Ward,* 68 Colo. 373, 374–75, 191 P. 99, 100 (1920). The rationale for the rule derives, here again, from the fact that execution of the deed and mortgage are considered simultaneous acts, such that the title never rests in the buyer unencumbered by the mortgage. As between the owner of property who never parts with the title except in exchange for a mortgage from the purchaser and a third party who lends money to the purchaser for part of the purchase price and accepts a mortgage on the property in return, the same logic demands that the vendor's mortgage have priority. The purchaser does not yet own the property at the time of the execution and never acquires title free from the vendor's purchase money mortgage. *See Legler,* 142 Colo. at 336, 350 P.2d at 1061; *see also Fecteau v. Fries,* 253 Mich. 51, 234 N.W. 113, 114 (1931); *Giragosian v. Clement,* 199 A.D.2d 656, 604 N.Y.S.2d 983, 984 (N.Y.App.Div.1993); *Friarsgate, Inc. v. First Fed. Sav. & Loan Ass'n,* 317 S.C. 452, 454 S.E.2d 901, 905 (Ct.App.1995). The purchaser is therefore never in a position to assign rights in the property without them being subject to the pre-existing encumbrance, even to a party loaning him money for the purchase.

In *Legler* this court addressed the issue of priority as between chattel mortgages held respectively by the owner of property and a third-party lender. Legler, the owner of a service station, agreed to sell the station to purchasers who procured a loan from the Bank of Denver. *Legler,* 142 Colo. at 334, 350 P.2d at 1060. The loan from the Bank of Denver to the purchasers was secured by a chattel mortgage covering the property of the proposed sale. On the date of the sale, Legler received a cashier's check in the amount of $4,000 from the Bank of Denver on behalf of the purchasers and a promissory note for $1,500, representing the balance of the purchase price. The promissory note was secured by a chattel mortgage on the property in favor of Legler. *Id.*

Although the Bank of Denver recorded its mortgage more than a year before Legler recorded, the purchase money mortgage held by Legler, the original seller of the property, was held to be entitled to priority in express reliance on the simultaneous act rationale from *Robinson. Legler,* 142 Colo. at 336, 350 P.2d at 1061. Noting particularly that the rule applies equally to real estate and chattel mortgages, the court in *Legler* inferred from the rationale giving purchase money mortgages priority over other liens a necessary priority of vendor purchase money mortgages over third-party purchase money mortgages. The third party's mortgage could not come between the deed and the vendor's purchase money mortgage any more than lesser liens could come between the deed and purchase money mortgages generally. *See Emery,* 68 Colo. at 376, 191 P. at 100.

If the holding and rationale of *Legler,* decades after *Bray,* were not sufficient evidence of the continued acceptance of the special nature of purchase money mortgages, including the priority of a vendor's mortgage over that of a third party, a careful reading of *Bray* dispels the suggestion that it intended anything to the contrary. In *Bray* the court found it unnecessary to even characterize the purchase money mortgages at issue as ven-

dor or third-party mortgages because it found the recording statute controlling. Rather than rejecting the principle that purchase money mortgages are entitled to priority over liens of lesser rank, as set out in *Emery v. Ward*, the court in *Bray* merely noted that the mortgages at issue in the case before it were "of equal dignity" in the sense that both were governed by the recording statute, and distinguished *Emery*, where both instruments were not covered by the recording statute.[4] *Bray*, 87 Colo. at 248, 286 P. at 278

Although Colorado has never expressly adopted the Restatement (Third) of Property § 7.2, the holdings of these cases, which support the priority of a vendor purchase money mortgage over third-party purchase money mortgages, are consistent with the Restatement and are supported by the same equitable considerations. *See id.*[5] As the Comments to the Restatement explain:

> [T]he equities favor the vendor. Not only does the vendor part with specific real estate rather than money, but the vendor would never relinquish it at all except on the understanding that the vendor will be able to use it to satisfy the obligation to pay the price. This is the case even though the vendor may know that the mortgagor is going to finance the transaction in part by borrowing from a third party and giving a mortgage to secure that obligation. In the final analysis, the law is more sympathetic to the vendor's hazard of losing real estate previously owned than to the third party lender's risk of being unable to collect from an interest in real estate that never previously belonged to it.

*Id.*, cmt. 6.

 Furthermore, nothing in these cases suggests that the parties cannot avoid the effect of the priority afforded vendor purchase money deeds of trust by subordinating the vendor's lien to that of the third-party lender by agreement. *See generally*, George E. Osborne, Grant S. Nelson & Dale A. Whitman, *Real Estate Finance Law* § 12.9, at 776 (1979). Although subordination agreements can be found by implication, the earlier recording of the third-party lender's deed of trust cannot, without more, provide a basis for such a finding. Here, the Bank and ALH stipulated that they were each aware the other would be loaning money to the purchaser and that both loans would be secured by deeds of trust, but they did not stipulate that there was any agreement concerning the priority of interests. By failing to challenge the district court's judgment in the court of appeals on the basis of a subordination agreement between the parties, the Bank waived this claim, and it will not be addressed by this court.

## IV.

Although the Bank's deed of trust was recorded before that of ALH, the Bank was not entitled to the benefits of the recording statute because it had notice of ALH's unrecorded instrument prior to acquiring rights of its own in the property. Furthermore, in the absence of a statutory determination of the relative priorities of the two deeds of trust, or any agreement of the parties resolving the matter, the deed of trust of ALH, the vendor, has priority over the deed of trust of the Bank concerning the same real property. The judgment of the court of appeals is therefore reversed, and the case is remanded.

---

4. The recording statute in place at the time of *Emery* did not include judgment liens among the interests affecting real property entitled to its protection. *See* C.R.S. ch. 28, § 694 p. 330 (1908). It was not until 1919 that the statute was amended to provide specifically for the recording of certified copies of judgments. *See* Colo.Comp.Laws ch. 102, § 4902 (1921).

5. Section 7.2(c) of the Restatement reads:

> A purchase money mortgage given to a vendor of real estate, in the absence of a contrary intent of the parties to it and subject to the operation of the recording acts, has priority over a purchase money mortgage on that real estate given to a person who is not its vendor.