*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2013 UT 47**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

INSIGHT ASSETS, INC.,
*Appellant, Cross-Appellee and
Plaintiff, Counterclaim-Defendant,*

*v.*

HOMERO FARIAS,
*Appellee, Cross-Appellant and
Defendant, Counterclaim-Plaintiff.*

No. 20110020
Filed August 6, 2013

Second District, Ogden Dep't
The Honorable W. Brent West
No. 090908263

Attorneys:

Kelly Ann Booth, Salt Lake City, for appellant

Ronald G. Russell, Rodger M. Burge, Jeffery A. Balls,
Salt Lake City, for appellee

ASSOCIATE CHIEF JUSTICE NEHRING, authored the opinion of
the Court, in which CHIEF JUSTICE DURRANT, JUSTICE DURHAM,
JUSTICE PARRISH, and JUSTICE LEE joined.

ASSOCIATE CHIEF JUSTICE NEHRING, opinion of the Court:

## INTRODUCTION

¶1    This case concerns the relative priorities of a vendor
purchase money mortgage and a third-party purchase money
mortgage, and the application of the doctrine of laches to purchase
money mortgagees who fail to assert their claims in a timely manner.
We conclude that, although Insight Assets, as vendor purchase
money mortgagee, may have a superior claim of right, its claim is
barred by the doctrine of laches, and accordingly affirm.

## BACKGROUND

¶2    In 2004, Joseph and Denise Phalen (Sellers) owned property located in Ogden, Utah. Sellers entered into a Real Estate Purchase Contract (REPC) with William and Roberta Boeck (Buyers). The parties agreed on a purchase price of $88,000. Of this, $70,300 was to be financed through a third-party purchase money mortgage by First Franklin Financial Corporation (Bank), $100 was paid as an earnest money deposit, and $17,600 would be provided through seller financing, otherwise known as a vendor purchase money mortgage. Sellers were aware of the financing arrangement but never communicated with Bank.

¶3    Sellers executed a Warranty Deed conveying the property to Buyers. Buyers executed a Deed of Trust naming Bank as beneficiary (Bank Trust Deed), securing repayment of Bank's loan. Buyers also executed a Trust Deed evidencing the seller financing (Sellers Trust Deed). After closing, the instruments were recorded together in this order: (1) Warranty Deed from Sellers to Buyers, (2) Bank Trust Deed, and (3) Sellers Trust Deed. Bank's Trust Deed was subsequently assigned to Wells Fargo Bank.

¶4    Shortly after closing, Buyers defaulted on their obligations to both Bank and to Sellers. In June 2005, Wells Fargo foreclosed on the property and properly recorded its deed. Sellers never attempted to foreclose on the property, nor did they assert any rights to it. Wells Fargo conveyed the property to another buyer, who conveyed the property to yet another buyer, who ultimately conveyed the property to Homero Farias, the defendant in this case.

¶5    In 2009, Sellers assigned their interest in the outstanding Sellers Trust Deed to Insight Assets, the plaintiff in this case. Insight Assets, through its substitute trustee, recorded a notice of default, stating that a default in Sellers Trust Deed had occurred and that Insight Assets had elected to sell the property to satisfy the amounts owing.

¶6    The district court determined, on summary judgment, that Mr. Farias took the property as a bona fide purchaser and therefore Insight Assets had no claim against him or the property. Insight Assets appealed. Mr. Farias cross-appealed the issue of attorney fees.

## ISSUES AND STANDARDS OF REVIEW

¶7 Insight Assets contests the district court's grant of summary judgment to Mr. Farias. The court concluded that Mr. Farias was a bona fide purchaser for value. A district court's grant of summary judgment is a question of law that we review for correctness.[1] Furthermore, an appellate court may affirm a district court's ruling on "any legal ground or theory apparent on the record."[2]

1. Insight Assets also argues that as a matter of law Sellers Trust Deed had a higher priority than the Bank Trust Deed, despite the order of recording. The district court did not reach this issue, but it also presents a question of law.

¶8 On cross-appeal, Mr. Farias contends that the district court erred in refusing to award him attorney fees under Utah Code section 78B-5-826. We review a district court's interpretation of a statute for correctness.[3]

## ANALYSIS

### I. THE PURCHASE MONEY RULE

¶9 Insight Assets correctly asserts the general Purchase Money Rule: a vendor purchase money mortgage, more simply called seller financing, ordinarily takes priority over any other third-party purchase money mortgage, typically bank financing. "Where the contest is between a purchase money mortgage to a third person who advances part of the purchase price . . . and a purchase money mortgage to the vendor . . . for the balance, the latter is given preference even if he had notice of the former."[4] This is because, as the Restatement explains, "the equities favor the vendor."[5] The vendor not only parts with money but with specific real estate, which the vendor would not relinquish except for the understanding that the vendor will be able to use the relinquished real estate to satisfy

---

[1] *Harvey v. Cedar Hills City*, 2010 UT 12, ¶ 10, 227 P.3d 256.

[2] *Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 (internal quotation marks omitted).

[3] *See Turner v. Staker & Parsons Cos.*, 2012 UT 30, ¶ 7, 284 P.3d 600.

[4] *Kemp v. Zions First Nat'l Bank*, 470 P.2d 390, 393 (Utah 1970) (internal quotation marks omitted).

[5] RESTATEMENT (THIRD) OF PROP.: MORTGAGES § 7.2 cmt. d (1997).

the mortgage owed the vendor.[6] "[T]he law is more sympathetic to the vendor's hazard of losing real estate previously owned than to the third party lender's risk of being unable to collect from an interest in real estate that never previously belonged to it."[7]

¶10　This rule, however, is not absolute. As we stated in *Kemp v. Zions First National Bank*, "an examination of the authorities and the principles involved will show that the result actually depends upon the circumstances of the given case, the equities, and the effect of the recording act."[8] The Restatement also specifies that "where only one of the parties has notice of the other, the recording acts, rather than [the Purchase Money Rule], should govern and should award priority to the party lacking notice."[9]

¶11　In *Kemp*, even though there was both a vendor purchase money mortgage and a third-party mortgage, this court turned its focus to the facts that the sellers "had given an unrestricted warranty deed, knowing that the financing bank was going to rely on it," "the bank had neither actual nor constructive knowledge that the vendor retained an interest in the property," and sellers, "who had failed to record their own mortgage . . . went to the bank and in effect approved the transaction by accepting their share of the proceeds therefrom, but without disclosing that they retained an interest."[10] In light of these facts, this court concluded that the third-party purchase money mortgage had priority.[11]

¶12　The Supreme Court of Colorado considered a fact pattern nearly identical to the facts at issue now in *ALH Holding Co. v. Bank of Telluride*.[12] In that case, as in this one, the buyer purchased the home with both a loan from the bank and a loan from the sellers.[13]

---

[6] *Id.*

[7] *Id.*

[8] 470 P.2d at 393.

[9] RESTATEMENT (THIRD) OF PROP.: MORTGAGES § 7.2 cmt. d.

[10] 470 P.2d at 393.

[11] *Id.*

[12] 18 P.3d 742 (Colo. 2000).

[13] *Id.* at 743.

The bank loan was recorded moments before the sellers' loan.[14] The buyer defaulted on both notes, and the bank foreclosed.[15] Significantly, however, the bank and the seller knew about the other's loan.[16] The Supreme Court of Colorado determined that the bank's note—the third-party mortgage—would have had priority over the vendor purchase money mortgage, except for the critical fact that it "was not entitled to the benefits of the recording statute because it had notice of [the seller's] unrecorded instrument prior to acquiring rights of its own in the property."[17]

¶13 Insight Assets does not dispute that in order for the Purchase Money Rule to apply, the parties must have had notice of each other's purchase money mortgage. On appeal, Insight Assets argues both that Bank had actual knowledge of the vendor purchase money mortgage (a question of fact), and that the title company's knowledge of the vendor purchase money mortgage was imputed to Bank (a question of law).

¶14 Mr. Farias advances three lines of defense. First, he argues that Bank did not know of the vendor purchase money mortgage, and therefore the Purchase Money Rule does not apply. Second, he argues that even if Bank did know of the vendor purchase money mortgage, the matter is irrelevant because Mr. Farias was a bona fide purchaser and therefore took the property free and clear. And third, he argues Insight Assets' claims are barred by the doctrine of laches. We disagree with Mr. Farias and the district court that he was a bona fide purchaser, because the fact that Sellers Trust Deed was recorded before the conveyance to Mr. Farias removes this case from the ambit of the Recording Act and the availability of relief to a bona fide purchaser. However, because we hold that the doctrine of laches bars Insight Assets' claim, we need not determine, as a question of fact or of law, whether Bank knew of the vendor purchase money mortgage.

---

[14] *Id.*

[15] *Id.* at 744.

[16] *Id.* at 743.

[17] *Id.* at 747.

## II. THE RECORDING ACT DOES NOT APPLY TO MR. FARIAS' CLAIM BECAUSE THE PRIOR INTEREST WAS RECORDED

¶15  Mr. Farias argues that even if the vendor purchase money mortgage were in the first position, he had no notice of this and took the property free and clear as a bona fide purchaser for value. The district court agreed with Mr. Farias on this point and based its ruling on this conclusion. We disagree.

¶16  Utah's Recording Act provides:

> Each document not recorded as provided in this title is void as against any subsequent purchaser of the same real property, or any portion of it, if:
>
> (1)  the subsequent purchaser purchased the property in good faith and for a valuable consideration; and
>
> (2)  the subsequent purchaser's document is first duly recorded.[18]

On its face, the Recording Act applies only to prior *unrecorded* interests. Here, Sellers Trust Deed was recorded in 2004—three years before the conveyance to Mr. Farias. There are no allegations that the recording was defective or improper in any way. Therefore, the appropriate analysis of the competing interests lies outside of the Recording Act.

## III. INSIGHT ASSETS' CLAIMS ARE BARRED BY THE DOCTRINE OF LACHES

¶17  "The equitable doctrine of laches is founded upon considerations of time and injury. Laches in legal significance is not mere delay, but delay that works a disadvantage to another."[19] Laches is "based upon [the] maxim that equity aids the vigilant and not those who slumber on their rights."[20]

¶18  Insight Assets argues that laches is inapplicable because it filed its notice of default within the six year statute of limitations for

---

[18] UTAH CODE § 57-3-103.

[19] *Mawhinney v. Jensen*, 232 P.2d 769, 773 (Utah 1951) (internal quotations marks omitted).

[20] *CIG Exploration, Inc. v. State*, 2001 UT 37 ¶ 14, 24 P.3d 966 (alteration in original) (internal quotation marks omitted).

obligations in writing.[21] Insight Assets is correct that six years is the applicable statute of limitations for relief under the Trust Deed and we have stated that "it is the practically invariable rule that laches cannot be a defense before the statutory limitation has expired."[22] However, that rule is not absolute. It is also true that "[t]he doctrine of laches may apply in equity, whether or not a statute of limitation also applies and whether or not an applicable statute of limitation has been satisfied."[23] Both the Purchase Money Rule and mortgage foreclosure actions are equitable in nature and therefore subject to the equitable defense of laches, irrespective of whether the statute of limitations period has run.[24]

---

[21] UTAH CODE § 78B-2-309; *see id.* § 57-1-34 ("The trustee's sale of property under a trust deed shall be made, or an action to foreclose a trust deed as provided by law for the foreclosure of mortgages on real property shall be commenced, within the period prescribed by law for the commencement of an action on the obligation secured by the trust deed.").

[22] *F.M.A. Fin. Corp. v. Build Inc.,* 404 P.2d 670, 672 (1965). While *F.M.A. Financial* is similar to the case at hand in some respects, namely, that both cases involve a party seeking repayment of an obligation secured by real estate and in both cases the party initiated such action over halfway through the six year statute of limitations, the facts of *F.M.A. Financial* are notably different. In *F.M.A. Financial*, the defendant seeking relief under the doctrine of laches was the original obligor on the promissory note and another court had previously denied its defense to the underlying obligation. *Id.* Furthermore, had laches applied in that case, it would have "result[ed] in giving [the defendant the benefit of the real estate transaction while] reliev[ing] him of his obligation to pay the agreed commission." *Id.* But most importantly, the defendant presented no disputed material facts relevant to the elements of laches. *Id.* As such, there was no reason to depart from the "practically invariable rule" in that case because the laches defense failed as a matter of law. *Id.*

[23] *Am. Tierra Corp. v. City of W. Jordan*, 840 P.2d 757, 763 (Utah 1992).

[24] *See DOIT, Inc. v. Touche, Ross & Co.*, 926 P.2d 835, 845 (Utah 1996) ("The doctrine of laches is an equitable defense which arises in

(continued...)

¶19 "[L]aches has two elements: (1) a party's lack of diligence and (2) an injury resulting from that lack of diligence."[25] Both elements are present here.

¶20 First, Insight Assets, as assignee of Sellers' interest, lacked diligence in asserting its rights to the property.[26] "The length of time that constitutes a lack of diligence depend[s] on the circumstances of each case."[27] Here, during the five years between Buyers' default and Sellers' assignment to Insight Assets, Sellers took no action to clarify or assert their rights to the property. Indeed, the priority of Sellers Trust Deed over the earlier-recorded Bank Trust Deed was dependent on the Purchase Money Rule, a multi-factor balancing test under which priority is determined by "the circumstances of the given case, the equities, and the effect of the recording act."[28] Thus, Sellers could not have rationally assumed that their interest had priority over Bank's interest without having brought an action to determine priority. Because the foreclosure by a senior interest-holder extinguishes a junior interest-holder's security interest in the property, by failing to bring a claim during Bank's foreclosure proceedings, Sellers risked forfeiting their security interest entirely. We can conceive of no explanation for Sellers' inaction other than lack of diligence.

¶21 Second, if we allowed Insight Assets' untimely claim to proceed, Mr. Farias would be injured. Mr. Farias negotiated the price

---

[24] (...continued)
cases where the plaintiff seeks equitable relief.").

[25] *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Lindberg*, 2010 UT 51, ¶ 27, 238 P.3d 1054; *see Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 2012 UT 66, ¶ 29, 289 P.3d 502.

[26] "[A]n assignee stands in the shoes of its assignor," and an "assignee is subject to any defenses that would have been good against the [assignor]." *Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 2010 UT 6, ¶¶ 13, 15, 230 P.3d 1000 (second alteration in original) (internal quotation marks omitted). Therefore, any delay by Sellers is attributable to Insight Assets for purposes of our laches inquiry.

[27] *Lindberg*, 2010 UT 51, ¶ 28 (alteration in original) (internal quotation marks omitted).

[28] *Kemp v. Zions First Nat'l Bank*, 470 P.2d 390, 393 (Utah 1970).

for his home without considering the $17,600 debt that Insight Assets claims is secured by the property. When Mr. Farias purchased the property three years after Buyers' default, it was reasonable for him to infer from Sellers' inaction that their security interest had been extinguished by Bank's foreclosure. In addition, the passage of time has made it difficult for Mr. Farias to gather evidence in his defense. The linchpin of Insight Assets' theory that its claim is entitled to priority under the Purchase Money Rule is the original third-party lender's knowledge of the seller financing. However, the original third-party lender has gone out of business, and Mr. Farias has been unable to locate its records or its former employees who may have information relevant to this case. Mr. Farias has also been unable to locate Buyers. In sum, the passage of time due to Insight Assets' lack of diligence has injured Mr. Farias in his ability to defend this action.

¶22 Because Insight Assets and its predecessors in interest have slumbered on their rights, equity should not come to their aid.[29] As such, the doctrine of laches bars Insight Assets' claimed interest in the real property at issue in this case.

## IV. MR. FARIAS IS ENTITLED TO ATTORNEY FEES

¶23 Finally, we consider Mr. Farias' cross-appeal for attorney fees. The district court determined that Mr. Farias was not entitled to attorney fees under Utah Code section 78B-5-826. Section 826 provides:

> A court may award costs and attorney fees to either party that prevails in a civil action based upon any promissory note, written contract, or other writing executed after April 28, 1986, when the provisions of the promissory note, written contract, or other writing allow at least one party to recover attorney fees.

¶24 In *Hooban v. Unicity International, Inc.*, we recently established that "[a] party is entitled to reciprocal fee-shifting by statute 'when the provisions' of a contract would have entitled at least one party to recover its fees had that party prevailed 'in a civil action based upon' the contract."[30] The statute "consists of a conditional if/then statement: (a) If the provisions of a written contract allow at least one

---

[29] *See CIG Exploration, Inc. v. State*, 2001 UT 37, ¶ 14, 24 P.3d 966.

[30] 2012 UT 40, ¶ 32, 285 P.3d 766.

party to recover attorney fees in a civil action based upon the contract, (b) then a court may award attorney fees to either party that prevails."[31] "[A]n action is 'based upon' a contract under the statute if a 'party to the litigation assert[s] the writing's enforceability as basis for recovery.'"[32]   In *Hooban*, we determined that these conditions were met because if Mr. Hooban had "prevailed in [the] suit, he would have been a party to the contract upon which the suit is based and would have been contractually entitled to attorney fees."[33]

¶25  In this case, Insight Assets requested attorney fees based on the contract in the district court and argues it is entitled to them on appeal, as well.  Sellers Trust Deed provided:

> Upon the occurrence of any default hereunder, Beneficiary shall have the option to declare all sums secured hereby immediately due and payable and foreclose this Trust Deed in the manner provided by law for the foreclosure of mortgages on real property and Beneficiary shall be entitled to recover in such proceeding all costs and expenses incident thereto, including a reasonable attorney's fee in such amount as shall be fixed by the court.

We determined above that Mr. Farias is the prevailing party in this action.  If Insight Assets' suit had been successful, it would have resulted in foreclosure on the original mortgage from the seller financing, and Insight Assets, as beneficiary, would have been entitled to reasonable attorney fees under the parties' contract. Thus, the statutory trigger for fee shifting is met:  the contract allows at least one party, Insight Assets, to recover attorney fees, and consequently the court may award attorney fees to the party that prevails in the action.  Therefore, section 826 affords a basis for an award of attorney fees to Mr. Farias as the prevailing party.  We reverse the district court's denial of attorney fees to Mr. Farias and remand this matter for a determination of the amount of fees owed to Mr. Farias.

---

[31] *Id.* ¶ 12.

[32] *Id.* ¶ 22 (second alteration in original) (quoting *Bilanzich v. Lonetti*, 2007 UT 26, ¶ 15, 160 P.3d 1041).

[33] *Id.* ¶ 32.

**CONCLUSION**

¶26 We conclude that Insight Assets' claim as vendor purchase money mortgagee is barred by the doctrine of laches. We also conclude Mr. Farias is entitled to reasonable attorney fees as the prevailing party.

----